[No. 2413.]

## HENRY AND JOHN WILLEY v. THE STATE.

1. PRACTICE—SEVERANCE upon the request of any one of plural defendants
    jointly indicted is a matter of right when the application therefor has
    been made in conformity with the statutes.

2. SAME—THEFT—CHARGE OF THE COURT instructed the jury that, "upon
    the trial of any person charged with the theft of any animal of the
    horse, ass or cattle species, the possession of such stolen animal by the
    accused, without a written transfer or bill of sale containing a description
    of such animal, shall be prima facie evidence against the accused, and

that such possession was illegal." *Held* erroneous, as being a charge upon the weight of evidence.

3. SAME.—See the statement of the case for a special instruction *held* to have been erroneously refused, in view of the evidence tending to show an innocent connection with the stolen animal on the part of one of the defendants.

4. SAME—CONFESSIONS OR DECLARATIONS of one conspirator, made after the consummation of the conspiracy, and not in the presence of his co-conspirator, can not be used in evidence against the latter.

APPEAL from the District Court of Orange. Tried below before the Hon. W. H. Ford.

The conviction of the joint defendants in this case was for the theft of a cow, the property of Oliver Bland, in Orange county, Texas, on the first day of October, 1882. Two years in the penitentiary was the term of imprisonment assessed on each defendant.

Robert Myers was the first witness for the State. He testified that some time in the summer of 1884 he was at the residence of the defendant, John Willey, sitting on the gallery, talking with John Willey and his father, old man B. Willey. While thus engaged on the gallery the witness saw the defendant, Henry Willey and John Jett, and perhaps some one else, drive a herd of ten or twelve cattle past the house. John Willey remarked to his father that there was the Craft cow they were going to kill. Witness looked at the animal indicated by John Willey and told him that that cow belonged to Oliver Bland. John Willey and his father insisted that the animal was the Craft cow—the one they were looking after for Mrs. Craft. Witness, John and old man Willey then went to the pen in which, meanwhile, the cattle had been placed, and witness identified the animal to them as Oliver Bland's cow. She was a red cow with a white face and white flecks on her flanks, and branded H. Witness told John Jett at the pen that the cow was the one Henry Reese sold Oliver Bland. After some dispute the cow was turned out, and Henry Willey then bought a beef from his father, old man B. Willey, and butchered it, turning the other animals out of the pen. A month or more later the witness saw the defendants, John and Henry Willey, driving a small bunch of cattle across the prairie towards their house. That bunch included the same cow which he had pointed out to them as the Oliver Bland cow. The defendants, with that bunch of cattle, were about six hun-

dred yards from their house, going in that direction. The witness, when he saw them, was between three and four hundred yards distant from them. The witness never afterwards saw that cow. The witness lived about a mile from the Willeys. Mr. Bland lived about seven miles distant from the Willeys. The cow ranged about the places of the witness and the Willeys. Bland had asked witness to look after the cow for him, and witness had obtained her description from Henry Reese, her original owner. Two or three weeks afterwards the witness saw the defendant John Willey at his home, and asked him about the cow. John said that she had been butchered. At this point the record recites, in brackets, as follows: "Defendants' counsel here objected to witness stating anything about Henry Willey, he not being present, which was by the court excluded." Continuing, the witness stated that John Willey said he helped to skin the cow, and that Henry Willey bought her from Jack Ochiltree.

Cross examined, the witness stated that the conversation with John Willey, last mentioned, took place at John Willey's yard fence, no one being present but the witness and the said John. If old man Jake Cochran was then at the Willey house the witness did not know it. Witness could easily distinguish the cow by her flesh marks when he last saw her in the herd of ten or twelve driven by the defendants. He was absolutely certain that cow was the Bland cow.

Re-examined, the witness said that he had never seen the Bland cow on the range since he saw the defendants driving her towards their house in the fall of 1884. In the same conversation in which John Willey said that the cow was purchased from Jack Ochiltree and that he helped to skin her after she was killed, he said that the R. H. Smith brand showed on the under side of the hide. He did not admit that the animal was the Bland cow. Nobody ever pointed out the Bland cow to the witness.

Oliver Bland testified, for the State, that some time in the spring of 1884 he purchased a cow, on the range, from Henry Reese. She ran about Robert Myers's place and witness asked Myers to look after her for him. Witness never saw the cow. He never gave his permission to either of the defendants to take or to kill her.

Henry Reese testified, for the State, that about three years prior to this trial, being in much need of money, he sold Oliver

Bland a cow, receiving therefor ten dollars in cash. It was then agreed that the witness should stand responsible for her on the range throughout the winter, and to deliver her in the spring and receive an additional ten dollars from Bland. Bland paid the ten dollars balance in the spring. The witness last saw the cow on her range near witness's house and the house of Robert Myers in 1884. She was a pale red cow with white face and flecked flanks. She was in the witness's mark and his brand. Witness's brand was HR but the R did not show on the animal.

Jake Cochran testified, for the State, that early in the fall of 1884 he was at the house of the defendant Henry Willey, in Orange county, Texas, when the two defendants butchered a pale red cow with white face. Henry Willey told witness that he bought that cow from Jack Ochiltree. On his cross examination the witness said that he saw several white faced red cows butchered in 1884 at the pen of Henry Willey, who was a butcher by trade. Witness lived at the Willey house in 1884. He remembered that on one occasion Robert Myers came to that house and asked John Willey about a horse. John told Myers in a jocular manner that he had killed and skinned the horse. John Willey was the witness's son-in-law. Witness did not spend the whole of his time at the Willey house, and could not say that the defendant never came to that house and asked John Willey about a cow.

Jack Ochiltree testified, for the State, that he had lived in Orange county a great many years, and was well acquainted with both of the defendants in this case. He had never sold a cow to either of them. Witness was sometimes known as Jack Henderson. The State closed.

Jeff Lewis was the first witness for the defense. He testified that he and Henry Willey were proprietory partners in a butcher shop in 1884. Henry Willey furnished and butchered the beef and witness sold it. The books of the concern show that John Willey was in the employ of witness and Henry Willey in 1884. He was settled with and quit work for the firm on the twenty-third day of August, 1884. Witness knew nothing about the cattle slaughtered. Henry did the buying and butchering and the witness the selling.

Mr. Graham testified for the defense, that Henry Willey bought a cow branded H from Jack Ochiltree, and, with the help of the witness, killed her.

Cross examined, the witness said that he saw Ochiltree sell

the cow to Henry Willey, Joe Crews being the only other person present. Henry was to pay nine dollars and a half for the cow. He paid Ochiltree three dollars in silver, and credited a butcher bill with five dollars, due him by Ochiltree, at the time of the transaction, and afterwards paid Ochiltree one dollar and a half in town. Defense closed.

Jack Ochiltree, recalled by the State in rebuttal, denied that he ever sold a cow to the Willeys or either of them. He never received three dollars or any other amount from Henry Willey in payment for a cow, nor did Henry Willey ever credit him a beef bill as part consideration for a cow. Witness owed Lewis & Willey a beef bill, but paid Lewis with six loads of wood. Witness looked after R. H. Smith's cattle in 1884. He heard during the year that the defendants were claiming one of Smith's cows, and went to see them about it. One of the defendants went with witness to the prairie and showed witness a red cow, which witness told them did not belong to Smith.

Robert Myers, recalled by the State, testified that Jake Cochran was not present at the conversation between himself and John Willey at the fence. John did not speak in a jocular manner on that occasion. Witness was at the Willey house several times in 1884.

Jeff Lewis testified, for the State in rebuttal, that Jack Ochiltree owed a butcher bill to the firm of Lewis & Willey, and paid it, but witness had forgotten how. He furnished wood to the witness in 1884,—perhaps as much as six loads.

The special instruction, which is the subject matter of the third head note of this report, reads as follows: "If the jury believe from the evidence that at the time of the taking, the defendant, John Willey, was a hired hand in the employ of the defendant, Henry Willey and one Jeff Lewis, and assisted the said Henry Willey in taking possession and killing of said cow, alleged to have been stolen, and that he did so under the instructions and by direction of the said Henry Willey, and at the time of the said taking, the defendant, John Willey, believed that said cow was the property of the said Henry Willey, or of the said Henry Willey and Jeff Lewis in partnership, and had no knowledge of any criminal intent on the part of the said Henry Willey in the alleged taking, you will find the defendant, John Willey, not guilty."

The motion for new trial raised the questions discussed in the opinion.

*J. T. Hart,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Appellants were jointly indicted for theft of a cow, the property of Oliver Bland. When the case was called for trial after their motion for continuance had been overruled, defendants presented to the court an application for a severance, as follows, viz.: "Now come defendants in the above entitled cause, and ask a severance upon the trial thereof, and defendants agree and ask that defendant Henry Willey be placed first on trial," which application was subsequently amended as a separate application of John Willey, and by the addition that "said severance is requested for the purpose of obtaining the evidence of said Henry Willey jointly indicted with him; that such evidence is material to his defense, and that he, John Willey, verily believes that there is no evidence against said Henry Willey." A severance was refused by the court. The learned judge, in his explanation appended to the bill of exceptions saved to the ruling, amongst other reasons for his action, says the application was overruled, " the court not being satisfied that it is a matter of absolute right that the defendants had to sever, and thinking that if it is true that it is a matter of absolute right, that it ought not to be," etc.

Articles 669 and 670 of the Code of Criminal Procedure, before they were amended, provided for a severance of defendants jointly indicted; and where an application therefor was made in the terms of the law, a severance was a matter of right. (Rucker v. The State, 7 Texas Ct. App., 549; Myers v. The State, Id., 640; Allison v. The State, 14 Texas Ct. App., 402.) These two articles of the code have been amended, and, as amended, now read: "Article 669. When two or more defendants are jointly prosecuted they may sever in the trial upon the request of either." "Article 670. When a severance is claimed the defendants may agree upon the order in which they are to be tried, but in case of their failure to agree the court shall direct the order of trial." (Gen. Laws Eighteenth Leg., Reg. Sess., p. 9.) In our opinion there can be no question as to the intention of the Legislature to confer upon such defendants the right to demand a severance and, where they come within the terms of the *statute* and demand such right, it is manifest error to refuse or deprive them of it.

One of the instructions thus given the jury in the charge of the court was as follows: "Upon the trial of any person charged with theft of any animal of the horse, ass or cattle species, the possession of such stolen animal by the accused, without a written transfer or bill of sale containing a description of such animal shall be *prima facie* evidence against the accused, and that such possession was illegal." This charge is upon the weight of evidence, and this court has condemned similar charges as vicious and erroneous. (Garcia v. The State, 12 Texas Ct. App., 336; Flores & Bernal v. The State, 13 Texas Ct. App., 665; Schindler v. The State, 15 Texas Ct. App., 394.)

In so far as defendant John Willey was concerned, in addition to his plea of not guilty, another theory in his behalf raised by the evidence was that if he was implicated at all in the driving or killing of the cow, then he was a hired hand, and in his connection with the driving or killing he acted, in whatsoever he did, under the honest belief that the animal was the property of his codefendant Henry Willey, or of the butchering partnership composed of Henry Willey and Jeff Lewis. Upon this phase of the case the special requested instruction asked by the defendant was the law, and it was error to refuse it, especially since the charge given contained no enunciation of the law pertinent to this portion of the facts. (Ivey v. The State, 43 Texas, 425; Taylor v. The State, 5 Texas Ct. App., 529; Allen v. The State, 42 Texas, 518; Anderson v. The State, 8 Texas Ct. App., 542.)

Looking to another trial of the case, we call attention of the court to certain testimony allowed over objection as shown by exception noted in the statement of facts. The witness Myers was allowed to testify to statements made by defendant John Willey to him when his codefendant Henry Willey was not present. Such confessions or admissions would be legitimate as evidence against John but not as against Henry. After the consummation of a conspiracy the declarations of one conspirator can not be used against his coconspirator. (Cox v. The State, 8 Texas Ct. App., 254; Holden v. The State, 18 Texas Ct. App., 92; Ricks v. The State, 19 Texas Ct. App., 308; Smith v. The State, 21 Texas Ct. App., 108.) A man's confession of guilt can only be used against himself. (Draper v. The State, 22 Texas, 400.)

For the errors discussed the judgment is reversed and the cause remanded.                              *Reversed and remanded.*