No. 2123.

William Neiderluck alias William Miller *v.* The State.

1. Burglary—Indictment may be sufficient to charge burglary with intent to commit theft, without describing the property intended to be stolen.
2. Same—Charge of the Court—New Trial.—See the opinion for a state of proof in a trial for burglary *held* to be insufficient to establish a burglarious entry by fraud; wherefore the trial court having charged the jury upon an entry by fraud, and having confined the jury in the charge to such an entry, it should have awarded the defendant a new trial.
3. Same.—In order to convict a domestic servant for the burglary of his master's house, it must be shown that he, if he acted alone, entered the same by an actual breaking. If, however, the domestic servant is shown to have been one of two or more conspirators to enter and burglarize his master's house, and, in pursuance of the conspiracy, he admitted his co-conspirators, a constructive breaking, it seems, will authorize his conviction. Independent of this rule, the co-conspirators will be guilty of burglary upon the constructive breaking by the domestic servant. See the opinion *in extenso* upon the question.

Appeal from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

The conviction in this case was for the burglary of the restaurant of Tom Wing, in Bexar county, Texas, on the third of July, 1886. The penalty assessed against the appellant was a term of nine years in the penitentiary.

The substance of the proof in this case is sufficiently summarized in the opinion of the court.

*Gerald Griffin,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

Hurt, Judge. This is an appeal from a judgment of conviction for the offense of burglary. The indictment charges that appellant, with others, entered in the night time the house of Tom Wing, by force, threats and fraud, with intent to steal the corporeal personal property of the said Wing. Because there was no description in the indictment of the property intended to be taken, appellant moved the court to quash. This

motion was overruled; and this action of the court is here assigned as error. We hold that in this the court did not err. (Whart. Crim. Law., sec. 820.)

The prosecuting witness, Tom Wing, on the night of the burglary, was the keeper of a restaurant on Houston street, in the city of San Antonio, the house fronting on said street. The front door of the premises was locked, and the back door closed and latched. This is positively declared by the witness Wing. Levy and Hyatt, domestic servants to Wing, were sleeping on the back gallery of the house. Though the back door was latched, the fastening could easily be lifted from the outside, through a crevice. About two o'clock of the said night, two men came to the back part of the house, Levy at the time being on a bed on the back gallery, and near the door. The two men went up the back steps, when Levy arose from the bed and commenced to shake Hyatt; then he went into the house, the two men before mentioned following after him. The record shows that Hyatt was not an accomplice, or *particeps criminis*. Condensing and applying, there was a conspiracy between Levy, appellant and others to commit the burglary. Levy was servant to Wing. He it was that opened the door by lifting the latch from the outside, and led the way into the house, appellant and others following.

The indictment charged an entry by force, threats and fraud. The learned trial judge so framed his charge as to hinge the guilt of appellant upon an entry effected by fraud, ignoring force altogether. Do the facts of this case show an entry by fraud? Upon this subject Mr. Bishop says: "The meaning of the verb *to break*, as employed in the law of burglary, was discussed in the author's work on statutory crimes. It does not require any separation of the particles of things, as where one breaks a stick; but if one, for example, lifts a latch and opens the door, or presses the door open without removing the fastenings, or with his hand raises an unfastened window, or thrusts himself down the chimney, or by fraud practised on the occupant *procures him to open the door*, he breaks the dwelling house. On the other hand, there is no breaking where one enters through an open door, or other aperture." The foregoing is cited for the purpose of presenting the author's remarks on fraud.

It will be seen that the fraud must be practised upon the occupant, and must be the means of inducing him to open the door. Mr. Wharton illustrates entry by fraud thus: "In cases

where the offender, with intent to commit a felony, for the purpose of effecting it gains admission by some trick, the offense is burglary, for this is constructive breaking. Thus, when thieves having intent to rob, raised the hue and cry, and brought the constable, to whom the owner opened the door, and when they came in robbed the owner and bound the constable, this was held a burglary. So, if admission be gained under pretense of business, or if one takes lodgings, with a like felonious intent, and afterwards robs the landlord, or gets possession of a dwelling by a false affidavit, without any color of title, and then rifles the house, such entrance, being gained by fraud, is burglarious." (Wharton's Crim. Law, sec. 765). These examples suffice to show the statutory meaning of fraud, as a means of entering a house. If the entry is by trick or device, whether perpetrated upon the occupant, or a servant authorized to give permission to enter, it would be burglarious.

We have seen, however, that Levy was not induced to open the door by any trick or fraudulent device. He was not the dupe, but the willing assistant of his co-conspirators, fully cognizant of their felonious intent, if not the master and controlling spirit. There is no pretence either that Wing was duped or misled into opening the door of his house to the conspirators. The record leaves it beyond question that neither Wing nor Levy was induced by fraud to permit the entrance. Levy, at the time of opening the door, shared every intent and purpose of his companions in crime.

There being nothing in the testimony to show an entrance effected by fraud, the court erred in instructing the jury upon a case made by that character of evidence. After having limited the jury to a conviction upon the theory of fraud alone, a new trial should have been granted, there being no evidence to support the theory.

With the view of ascertaining if there is a theory upon which the appellant may be legally convicted, provided the witnesses be credible and their testimony sufficiently strong, let us examine the record. Though a co-conspirator, Levy, under the evidence in the record, for the argument, can not be convicted. Being a domestic servant, he must, under the statute, have entered the house by an *actual* breaking. (Penal Code, art. 714.) The lifting of the latch by him was not such *actual*, though a constructive, breaking. If it be conceded, however, that the

facts would not, under the article cited, support a conviction as to Levy, the same conclusion does not follow as to his associates.

Without question, if the breaking by Levy had been *actual*, all engaged with him would have been guilty with him.   But it may be urged that since Levy is not guilty, the house was not entered in such manner (the door being opened by him who is innocent in law) as to constitute burglary.   This is ingenious and plausible, but at the same time fallacious.   For, if Levy can not be punished, and is in law not guilty, his acts—the parties being co-conspirators and acting together—are, nevertheless, the acts of each conspirator; and hence, since Levy opened the door in furtherance of the common design of all, though not punishable, he was the agent, means, and instrument of all parties concerned.   Article 77, Penal Code, provides that "if any one, by employing a child, or other person who can not be punished, to commit an offense, * * * or by any other indirect means, causes another to receive an injury to his person or property, the offender, by the use of such indirect means, becomes a principal."   (Smith v. The State, 21 Texas Ct. App,, 107, and authorities cited.)   Now, if Levy is guilty, there is no doubt that appellant is guilty as a principal, all being present and acting together; but if Levy is merely the means used—the instrument by which the entrance was effected—each and all, save Levy, would be guilty as principals, Levy's breaking being the breaking of all.

We have been considering this question upon the assumption that there was not such a breaking as would justify a conviction of Levy, he being a domestic servant.   If the domestic servant is acting alone, there must be an actual breaking to render it burglarious.   But does it follow that there must be such breaking when the servant is acting with others who are not servants ?   We have given this subject a most careful consideration, and are led to conclude that such breaking is not necessary.   Mr. Russell, on this subject, says: " The breaking may also be by conspiracy.   Thus, when a servant conspired with a thief to let him into his master's house to commit a robbery, and, in consequence of such agreement, opened the door or window in the night time, and let him in, this, according to the better opinion, was considered to be burglary in both the thief and the servant.   And this doctrine is confirmed by a subsequent opinion.   Two men were indicted for burglary, and upon the evidence it appeared that one of them was a servant in the

house where the offense was committed; that in the night time he opened the street door, let in the other prisoner and showed him the side board, from whence the other prisoner took the plate; that he then opened the door and let the prisoner out, but did not go with him, but went to bed. And upon these facts being found specially, all of the judges were of opinion that both the prisoners were guilty of burglary, and they were accordingly executed." (2 Russell, pp. 9, 10.)

Upon a similar state of facts, Lord Hale said: "It seems to be burglary in both, for if it be burglary in the thief, it must needs be so in the servant, because he is present and aiding the thief to commit a burglary." We hold, therefore, that a domestic servant, conspiring with those who are not servants, may be guilty of burglary, though the breaking be not actual, and such as if committed by the servant acting alone would not be burglarious.

For the error indicated in the charge the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered February 2, 1887.