24  141
31  310

## No. 2643.

### BOB COLLINS AND JIM LINDLY *v.* THE STATE.

1. PRACTICE—CONTINUANCE—NEW TRIAL.—However complete may be the diligence used to secure the presence of absent witnesses, as shown by application for continuance, the refusal of the continuance is not ground for new trial if the absent testimony in the light of the evidence adduced on the trial is not probably true.
2. SAME—EVIDENCE.—Under the provisions of article 772 of the Code of Criminal Procedure, the written testimony of a witness, taken at the examining trial of the accused, can be read in evidence "when, by reason of age or bodily infirmity, such witness can not attend."  Under this rule it is not essential that the bodily infirmity shall amount to a permanent disability.   As a predicate for the admission of the written testimony on the examining trial, it was shown in this case that the witness was at home, in another county, forty miles distant, where, at the time of the trial, and for months before, he had been confined to his house from the effects of an attack of measles, which had destroyed one of his eyes and left him a chronic invalid, with constant pains in his head and palpitation of the heart.   *Held,* that in admitting the written testimony in evidence the trial court did not err.   See the opinion on the question.
3. SAME—CONFESSIONS—CHARGE OF THE COURT.—To the rule that a confession is inadmissible if made by an accused when in arrest, unless made after warning that the same will be used as evidence against him, there is an exception when the confession comprehends a statement of facts "found to be true, and which conduce to establish his guilt."   Inasmuch as the confession of Lindly, which was made during his confinement in jail, and in the absence of Collins, though made without warning, comprehended a statement of facts found to be true, and which conduced to the establishment of guilt, it was, upon the joint trial of Collins and Lindly, admissible as against Lindly, but not as against Collins.   The

trial court, however, instructed the jury that the confessions could not be considered as evidence against Collins; wherefore it is *held* that the action of the court upon the question raised on the confession was correct.

4. Theft—Principal Offenders—Charge of the Court.—In order to constitute the accused a principal in the crime of theft, it devolves upon the State to establish his complicity in the original taking. In view of the evidence in this case, and of the refusal of a charge based upon it, the failure of the trial court to apply this doctrine to the case, in so far as it concerned the defendant Lindly, was error.

5. Same—Fact Case.—See the statement of the case for evidence *held* to support the conviction for theft of the defendant Collins, but insufficient to support the conviction of Lindly.

Appeal from the District Court of Fannin. Tried below before the Hon. D. H. Scott.

The appellants in this case were jointly indicted, tried and convicted for the theft of a mare and colt, the property of one Bob Carter. A term of five years in the penitentiary was the penalty assessed against each of the appellants.

L. C. Lamaster was the first witness for the State. He testified that he lived in Honey Grove, Fannin county, Texas, and that he knew both of the defendants, whom he pointed out in court. He first saw the defendants in the town of Honey Grove, of which town he was city marshal, on the second day of July, 1887. On the day mentioned, the defendants had in their possession a bay mare and colt. The bay mare was being offered for sale at a price less than half her actual value. She was worth at least forty dollars, and was being offered in the market for sixteen. The low price demanded for the animal aroused the suspicion of the witness, and he proceeded to question the defendants about the property. Collins said, in reply to questions, that his father gave him the mare in Arkansas, and that, for the last four or five years, he had been living with his father and family in Hopkins county. Collins was the man who was offering the mare for sale, and, at the time that witness interfered, had contracted her to Bowlin Wilkerson for sixteen dollars. The said Wilkerson was about to pay Collins for the mare, when the witness stopped him and arrested the defendants, remarking that he thought there was something wrong about the horses. Wilkerson thereupon canceled the agreement to buy. The defendant Collins did all of the talking, but Lindly was present. The witness did not hear Lindly say anything about the animals until

after he was arrested and placed in jail.   Witness arrested Collins and Lindly together, but confined them in separate cells. He had a talk with Lindly in jail after his arrest.   Collins was not present at that conversation, nor did witness warn Lindly of the consequences that might follow his confession.   Lindly told witness, in that conversation, that Collins took the horses in Hopkins county on the night before; that he tied the mare out all night, and came by his, Lindly's, house for him early in the morning, leading the mare; that Collins then told him that he took the mare and colt from Bob Carter, and asked him, Lindly, to go with him to Honey Grove, where he would sell the mare and get on a "bust" with the proceeds; that, if the witness would permit him, he, Lindly, would write to the post master at Fairlands, in Hopkins county, who would notify Carter, and it would be established that Carter owned the animals.   Thereupon the witness wrote to Bob Carter, care of the post master at Fairlands, and a few days later the said Carter and one J. W. Cundiff came to Honey Grove, and Carter proved his property in the animals and they were delivered to him.

J. W. Cundiff testified, for the State, that he and both of the defendants lived at Fairlands, in Hopkins county, Texas.   A few days subsequent to July 2, 1887, Bob Carter, who also lived near Fairlands, informed the witness that he had heard of his missing mare and colt at Honey Grove.   He then requested witness to go with him to Honey Grove to recover them.   Witness went, and found the animals described in the indictment in the possession of L. C. Lamaster, who had them in a livery stable.   Witness identified them at once as the property of Bob Carter.   This witness testified that the said Carter, at the time of the trial, was at his, witness's, house, in Hopkins county, physically unable to attend court.   Some months prior to this trial, the said Carter was stricken with measles, which finally settled in his eyes, one of which the disease completely destroyed.  'The said Carter was not now actually confined to bed, but was totally unable to travel to Bonham to attend this trial.   Witness and Carter started to Honey Grove immediately upon the receipt by Carter of Lamaster's postal card in reference to the animals.   Witness once owned the mare in question, and knew her to be the property of Bob Carter.   Both of the defendants lived near Bob Carter.

Nancy Carter, the mother of Bob Carter, testified, for the State, that her said son contracted the measles about three months before this trial, and had never entirely recovered.   He

was totally unable to attend this trial. The disease had destroyed one of the said Bob Carter's eyes. His present complaint was of severe pains in the head, and an internal affection, pronounced by the doctors to be palpitation of the heart. He was at present at the house of J. W. Cundiff, in Hopkins county, about forty miles from Bonham, and was confined to his room. The first that witness knew of the mare and colt being missing was when Lamaster's postal card, reporting them to be in Honey Grove, was received. Bob Carter left home in July, 1887, to attend the examining trial of the defendants in Bonham. In connection with this witness's testimony the State introduced in evidence the written testimony of Bob Carter upon the said examining trial. That instrument reads as follows:

"My name is Bob Carter. I live in Hopkins county. I know the defendants. They live in Hopkins county. About two weeks ago I saw them in Hopkins county, and about that time I lost a mare and colt. They were taken away from Hopkins county, Texas, and belonged to me. The mare was a bay animal and had a colt. Her brand, which was blotched, was, I believe, JJ with JJ underneath. I found the mare and colt in Honey Grove, in the possession of the city marshal. I found them on July 19, 1887. The animals were taken without my consent."

On her cross examination, the witness Nancy Carter testified that her son Bob, when a minor, worked for and earned a pony, which he exchanged for the mare. He had owned the mare between two and three years. Cundiff went with Bob to Honey Grove after the mare and colt, acting upon information received from Mr. Lamaster.

Bowlin Wilkerson was the next witness for the State. He testified that he met the defendants in Honey Grove, Texas, on or about July 2, 1887. They had in their possession a bay mare and colt, which the defendant Collins, who did all the talking, offered to sell the witness for sixteen dollars. Lindly was present, but took no part in the conversation or negotiations. Witness estimated the animals to be worth at least forty dollars. He agreed to pay and was in the act of paying Collins sixteen dollars for the animals, when Lamaster interfered and arrested the defendants.

District Clerk G. W. Blair testified, for the State, that two attachments were issued to secure the attendance of Bob Carter on the second day of September, 1887, that being the day originally set for the trial of this case. Both of those attachments

being returned "not found," the case was reset for September 9, 1887.

The State closed, and the defendant offered no evidence.

The motion for new trial raised the questions discussed in the opinion.

*Taylor & Galloway,* for the appellants :   The court erred in refusing special charge number two, to the effect that to convict defendant Lindly, the evidence must connect him with the original taking;  and, further, if defendant Collins took the animal and Lindly was not present, and did not aid him by words or acts, and did not know Collins's unlawful purpose, to acquit.   (Morrison v. The State, 17 Texas Ct. App., 34; Warren v. The State, Id., 207.)

The authorities above show that, in order to convict, the party must have taken the animal with the intention at the time to appropriate it to his own use.   If it be true, as stated by Lindly in his confession, that Collins stole the mare, and that he (Lindly) knew nothing of said fact until next day, the theft was complete before his connection therewith, and he could not be convicted of theft.   He might be guilty of having in his possession stolen property, knowing that it was stolen, but he was not charged with this offense.   The charge asked by defendants presented this phase of the case, and should have been given, inasmuch as the question was ignored by the general charge.

The court erred in admitting the testimony of Bob Carter (the alleged owner of the stolen animal) taken before the examining court, because said Carter lived within the jurisdiction of the court, and the evidence failed to show that he could not attend on account of old age or bodily infirmity.   We state as a proposition that the evidence must show that the witness had some bodily infirmity rendering him incapable of being in court, before the testimony in the examining trial can be introduced.

The mother of the witness stated that, some months prior to the trial, her son had measles, and they settled in his eyes and head; that he lost one of his eyes therefrom; that he had been confined to his room for some time, was in a low state of health, and was unable to travel or attend court; that he had something the doctors called palpitation of the heart.   Cundiff testified substantially as Mrs. Carter, and in addition, said that, when

he left home, two days prior to this trial, said witness was not confined to his bed, but was unable to leave his room.

Mr. G. W. Blair, district clerk, testified that two attachments had been issued for witness Bob Carter; that he was not found on the second of September, when this case was set for trial, and the case was reset for the ninth of September.

The examining trial evidence shows that Carter was in Honey Grove on July 19 and 20, hunting his horses, and found them. This was less than one and a half months prior to the second of September, 1887. (Code Crim. Proc., art. 772; 1 Whart. Crim. Ev., secs. 178, 179.) .

The question presented by this assignment is the construction of that clause of the statute that permits this character of evidence to be introduced on the ground of bodily infirmity. From the authorities above cited it is clearly decided that the disease, sickness or ailment of the witness must be of such character as would advise the court that it would render the witness incapable of attending court at any future term by a postponement of the trial. The authorities further state that it would be much safer to continue the case than risk this character of evidence.

We think it was the intention of the Legislature, when these exceptions were engrafted on the laws, that the infirmity must be permanent and necessarily render the witness unable to attend the court at all. We believe this from the fact that the other grounds upon which such testimony can be received show, first, that the witness must be beyond the jurisdiction of the court, out of the State. If such witness is within the State, the court will continue for the testimony; second, when the witness is kept from the trial by the defendant; third, death; fourth, old age; and last, infirmity. Now, does the evidence show that this witness was so infirm as not to be able to attend the next term of the court? We think not.

*W. L. Davidson*, Assistant Attorney General, for the State: I do not think that the principle embraced in the appellant's second requested charge, to the effect that the appellant Lindly must have been present and aided and encouraged his co-defendant in the taking of the animals, is the law of this case. In the abstract the proposition is correct, but, in view of the fuller and closer instruction upon the fact, embraced in the general charge, the special charge was not necessary in this case. The true cri-

terion as to principals, as defined by our statute, and decided by
our courts, is not that announced in the charge requested and
refused.   The doubt of Lindly's connection with the theft is suffi-
ciently set forth in the general charge, and the jury must have
fully understood the matter.   This could not affect Collins.   The
two cases cited by counsel for the appellant (Morrison v. The
State, 17 Texas Ct. App., 34, and Warren v. The State, Id., 207),
support the proposition embraced in the requested charge, but
neither they nor the said requested charge are applicable to this
case.

Cook v. The State, 14 Texas Court of Appeals, 96, lays down
the rule as to principals under our statute.   With the common
law definition we have nothing to do, because our statute has
settled this matter and defined and fixed a rule.   The authorities
cited go to the intent of the party at the time of the taking, and
not the taking itself.   The intent in this case is definite, even as
to Lindly, and the question he raises is, does the evidence show
he was connected with the taking so as to make him a principal?
The court, in defining principals and in his charge on circum-
stantial evidence, fully submits all this question.   It was one of
possession of recently stolen property.   His confession was a
circumstance he told for his own benefit.   It may be that his co-
defendant stole the animal, and he came along to enjoy the bene-
fits.   This is not probable, and does not even raise any presump-
tion of probability.   The statement of his co-defendant in his
presence of the nature of their ownership, through his father
shows it untrue.   These circumstances were all properly left to
the jury and under appropriate instructions. · The charge of the
court presents the liability of appellant under the facts, and the
law of the case as pertinently as was requisite, and it is thought
there was no error in refusing the special charges insisted on.
(Scales v. The State, 7 Texas Ct. App., 361; ·Heard v. The State,
9 Texas Ct. App., 1; Cook v. The State, 14 Texas Ct. App., 96.)

Did the court err in permitting the State to introduce the tes-
timony of the owner, Bob Carter, as taken on the examining
trial, and properly proved up, the said Carter being sick at the
time of final trial, and unable to be in attendance on the court,
and not out of the State?

This proposition is based on one phase alone of article 772,
of the Code of Criminal Procedure, to wit: "By reason of
bodily infirmity such witness can not attend."   If the witness
could be shown to be laboring under bodily infirmity at the

time of the trial, and to such an extent as to prevent his attendance upon the court, then, the other requisites being complied with, and the proper predicate laid for its introduction, there is no reason why the evidence should not be used. It is seen by the numerous decisions of this court, that when the party has fled, or absconded, or is absent from the State, his written evidence can be used, provided in all of these cases enumerated the defendant has been confronted with the witness upon the trial at which was brought out the testimony. (Pinkney v. The State, 12 Texas Ct. App., 352; Evans v. The State, Id., 370; Kirby v. The State, 23 Texas Ct. App., 13; Conner v. The State, Id., 378.)

If the depositions can be used for one purpose, a proper predicate being first laid, or for one of the statutory causes, or under and by virtue of one of said causes, then the same could be used under and by virtue of any of the provisions of said statute provided the proper rules were complied with. (Evans v. The State, supra; Code Crim. Proc., art. 772.) One of those expressly enumerated is the "bodily infirmity" of the witness.

If the testimony was reduced to writing, or if the witness testified in the examining trial, and when the appellants were present, then, if the predicate was laid, the State could introduce the testimony. (Code Crim. Proc., art. 772.)

Now, then, was Carter shown to be afflicted with "bodily infirmity" such as is contemplated by the statute? It is thought he was. In the first place, words are, or must be, understood in our law in the sense in which they are understood in common language, unless specially defined. (Penal Code, art. 10; Loyd v. The State, 19 Texas Ct. App., 137; Wade v. The State, 22 Texas Ct. App., 256; Williams v. The State, ante, p. 17.)

We understand, then, by infirmity "the state of being infirm; an imperfection or weakness; especially a disease; a malady; as an infirmity of body." (Webster's Dic., word *Infirmity*.) This is the usual meaning,—so understood in common language.

White, Presiding Judge. This appeal is from a judgment rendered against appellants in a prosecution wherein they were jointly indicted, jointly tried, and both convicted for the theft of two horses, the property of one Bob Carter.

At the trial, they both joined in an application for continuance, for four absent witnesses, viz., Bob Glover, Albert Bailey, William Post and William McDonald, and swore they expected to prove by said witnesses that they bought the horses of the owner, Bob

Carter, and paid him for them.   Defendants offered no witnesses on the trial, but we presume that both Glover and Bailey were there.   Bailey most certainly was, because his affidavit as to the citizenship of Post and McDonald, the other two absentees, is attached as a part to the motion for continuance, and he says nothing about the purchase of the animals from Bob Carter or any one else.   If Glover and Bailey were present, then it is clear that defendants were most grievously mistaken as to what they would swear, and the fair presumption is that they were equally as badly mistaken with regard to Post and McDonald, who happened not to be served with process.   At all events, if Post and McDonald should testify as proposed in the application, we think, in the light of the other evidence, such testimony would be most probably untrue.   In so far as the defendant Lindly is concerned, such testimony is unquestionably shown to be untrue by his proven confessions, which, in material particulars, as we will see shortly, were proven to be true.   This application for continuance, even if in conformity with statutory requirements, presents, for the reasons stated, no merit when considered as part of the motion for new trial.

Serious complaint is made that the court permitted, over objections of defendants, the written testimony of Bob Carter, the alleged owner of the stolen animals, as deposed and reduced to writing at a previous examining trial of defendants for this same theft.   As a predicate for its admission, the prosecution proved that said Bob Carter was at home, forty miles distant in another county, confined to his room, which he was and had been unable to leave for some months, on account of the effect of a serious attack of measles, which had destroyed the sight of one of his eyes and left him a chronic invalid, with constant pains in the head and palpitation of the heart.

Our statute makes provision for the admission of such testimony "when, by reason of bodily infirmity, such witness can not attend." (Code Crim. Proc., art. 772.)   The same rule applies as is provided for depositions in article 774 of the Code of Criminal Procedure.   What is bodily infirmity?   Mr. Webster defines "infirmity" "a disease," "a malady," "feebleness."   Mr. Bouvier says *infirm* means weak, feeble, and he remarks that "where a witness is infirm to an extent likely to destroy his life or to prevent his attendance at a trial his testimony *de bene esse* may be taken at any age." (Bouvier's Law Dic., *infirm, de bene esse.*)

Speaking of the circumstances which justify the use of the

testimony of an absent witness, Mr. Wharton says: "Sickness falls under the same rule. Thus, in an old case where a witness on his journey to the place of trial was taken so ill that he was unable to proceed, we find it recorded that his deposition was allowed to be read; and the same liberty would apply to depositions taken in a prior case between the same parties. At the same time it must appear that the sickness is of a character imposing permanent inability" (1 Whart. Ev., 2 ed., sec. 179; 1 Greenl. Ev., section 163); that is, "when, from the nature of the illness or other infirmity, no reasonable hope remains that the witness will be able to appear in court on any future occasion." In his work on Criminal Evidence the same learned author says: "Whether the deposition of a sick or insane witness can be taken in a criminal case depends upon local statutes, but wherever the deposition has been duly taken in a preliminary procedure it can be received in subsequent proceedings against the same defendant, the witness being unobtainable." (Whart. Crim. Ev., sec. 230.) This was the common law and is the general rule.

But our statute does not declare that the "infirmity" must be permanent. Under a modern statute, somewhat similar to ours, in England, it was said "there is nothing in the words of the statute which renders it necessary that the inability of the witness to attend at the trial should be permanent; it may, therefore, be implied that it may not be so. Before the statute, it seems to have been doubted whether a mere temporary illness (as with a woman about to be confined) was a sufficient ground for admitting the deposition. * * * And there can be no doubt that a judge would now exercise his discretion and decide whether in the interests of justice it were better to read the deposition or to adjourn the trial in order to obtain the oral testimony of the witness." (See note to section 230, Whart. Crim. Ev.) We think this is the correct doctrine applied to the construction to be given our statute in so far as it relates to bodily infirmity. The facts as to the witness Bob Carter would show him to be in a condition of bodily infirmity by reason of which he was unable to attend, and the court did not err in permitting his testimony to be read.

When the prosecution proposed to introduce in evidence the confessions of the defendant Lindly, they were objected to by both defendants upon the ground that he, Lindly, was at the time in jail, and he had not been previously cautioned that they

might be used against him; and said confessions were also objected to by the defendant Collins because they were not admissible against him, he not having been present when they were made by Lindly.   Lamaster, the city marshal of Honey Grove, who arrested defendants, swore that after he had put them in jail, he had a talk with Lindly in the absence of Collins, and Lindly said "that Collins took the horses in Hopkins county, Texas, on the night before, and tied the mare out all night, and came by for him next morning. leading the mare.   That then Collins told him about having taken the mare, and told him (Lindly) to come and go with him, Collins, to Honey Grove, and that they would sell her, and they would have a bust on the money.   *   *   That the mare and colt belonged to Bob Carter, of Hopkins county, near Fairlands, and that if he, witness, would write to the post master at Fairlands, he would send the letter to Carter, and that they would learn that the mare belonged to Carter.   Witness stated that he wrote to Bob Carter, in care of the post master, about the mare, and in a few days he (Carter) came to Honey Grove in company with J. W. Cundiff, and went to the stable where the mare and colt had been placed by witness, and pointed them out and took them off with him."

An exception to the rule that a confession made in arrest can not be used unless the party has first been cautioned that it may be used against him is where, "in connection with such confession, he makes statement of facts or of circumstances that are found to be true, which conduce to establish his guilt."  (Code Crim. Proc., art. 750.)  Such was the case in this instance.  His statement as to who was the owner of the animals was found to be true, and the statement did conduce to establish his guilt. The confession was properly admissible under the circumstances as against the defendant Lindly.   (Speights v. The State, 1 Texas Ct. App., 551; Walker v. The State, 9 Texas Ct. App., 38; Kennon v. The State, 11 Texas Ct. App., 356; Allison v. The State, 14 Texas Ct. App., 123; Weller v. The State, 16 Texas Ct. App., 201; Bean v. The State, 17 Texas Ct. App., 60; Collins v. The State, 20 Texas Ct. App., 400.)

But, whilst the confession was legitimate and admissible as against Lindly, it was inadmissible as to his co-defendant Collins, and the court so expressly charged the jury, and instructed them that they could not consider the confession as evidence against Collins.   This is all that could be done where the parties were both on trial and the evidence valid as to one and not so as

to the other.   We find no error in the rulings connected with Lindly's confession.

It will be noticed from the foregoing that the State put in evidence the confession of Lindly.   In connection with this confession, the other testimony affirmatively shows that he never made any claim to or exercised any control over the horses, nor did he attempt to make sale of them.   He was simply present with Collins, who was the claimant of and the active party endeavoring to sell them.   Now, if Lindly's confession was true, then he had nothing to do with the original "taking," or theft of the animals, and had no connection of any character with them until the next morning after their theft by Collins was complete. If he did not participate in the original taking, and took no part in its consummation, then he.was not guilty of theft, however criminal his subsequent conduct might be.   He must have been present and participating in the theft, or doing something at the time of its perpetration in connection with its perpetration— which would show an "acting together" between himself and Collins in the accomplishment of the contemplated crime—before he could be considered a principal offender in the eye of the law. (Penal Code, art. 74; Smith v. The State, 21 Texas Ct. App., 108; Watson v. The State, Id., 598, and see a full discussion of the subject in 6 Crim. Law Mag., 350, and note.)

Occupying this attitude to the transaction, the court should have charged specially with reference to the facts, so that the jury might have been enabled to pass intelligently upon Lindly's branch of the case.   A special instruction upon the subject was asked by his counsel, and refused, and which, though not critically correct in itself, was sufficient to call the court's attention to the necessity of a charge pertinent to that branch of the case. As given, the charge of the court was too general under the circumstances.

In so far as the appellant Collins is concerned, we have found no error in the record demanding a reversal, and as to him, the judgment will be affirmed.   For the defect in the charge of the court as to Lindly, which we have pointed out, and, moreover, because as to him the evidence, which was all State's evidence, is not, to our minds, conclusive of his complicity in the theft of the animals, the judgment as to him will be reversed and the cause remanded for another trial.

Affirmed as to Collins, and reversed and remanded as to Lindly.                              *Ordered accordingly.*

HURT, JUDGE, is of the opinion that "bodily infirmity," as used in article 774, Penal Code, means such infirmity as is apparently permanent, and he thinks the facts shown with regard to the witness Bob Carter establishes such apparent infirmity, and that his evidence was properly admitted in this case. With this explanation he concurs in the opinion.