BOB McFADDEN v. THE STATE.

*No. 3270.    Decided December 7.*

1. **Practice—Continuance—New Trial.**—The application showing a want of diligence to secure the absent testimony, the continuance was properly refused in the first instance.   And in so far as it was probably true, the absent testimony being immaterial, the court properly refused the motion for new trial.

2. **Same—Evidence.**—A State's witness, testifying about the animals involved in the prosecution (which he bought from the accused and one Freeze), was properly permitted to read from the bill of sale executed by Freeze, conveying the said animals, for the purpose of refreshing his memory as to marks and brands.

3. **Same—Conspiracy.**—The defense further objected to the bill of sale as evidence, because it was executed by Freeze after the offense charged in the indictment was consummated, and upon the ground that he, defendant, was not a party to, and was not aware of the contents of the instrument.   *Held*, that the bill of sale was properly admitted in evidence, the proof showing that the said bill of sale was a part of the *res gestæ* of the consummation of the crime, and that defendant was present in the room when it was executed by Freeze, between whom and defendant the evidence established a fraudulent conspiracy to sell or dispose of the stolen animal.   To this state of case two rules are applicable:   1.   The parties are principal offenders, or acting together, so long as any portion or object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished.   2.   The acts and declarations of one of the conspirators, even in the absence of the defendant, but before the consummation of the sale of the property and division of the proceeds, are legitimate evidence against the defendant.

4. **Same—Depositions—Certificate.**—The statutes of this State prescribe no particular form of certificate to authenticate testimony taken before an examining court.

5. **Same—Privilege of Counsel.**—That clause of the Act of April 4, 1889, which prohibits counsel from alluding to or commenting upon the failure of a defendant to testify in his own behalf, can not be extended in meaning to protect from the criticism of counsel a defendant who takes the stand and testifies in his own behalf; and if, in his argument, the counsel animadverts upon the defendant's failure, while testifying, to explain inculpatory facts proved against him, he commits no abuse of the privilege of argument.   In other words, the attitude of a defendant on the witness stand is identically the same as that of any other witness in the case.   See the opinion *in extenso* on the question.

6. **Receiving and Concealing Stolen Property—Fact Case.**—See the statement of the case for evidence *held* sufficient to support a conviction for receiving and concealing stolen property.

APPEAL from the District Court of Rains.   Tried below before B. F. Looney, Esq., Special Judge.

This conviction was had under the second count of an indictment, which said count charged the appellant with receiving from Lum Freeze, and concealing, a certain beef steer, the property of S. A. Montgomery, knowing the said beef steer to have been stolen.   A term of two years in the penitentiary was the penalty assessed by the verdict.

W. J. McCray was the first witness for the State.   He testified, in substance, that he and Lowenstien were partners in the butcher business in Greenville, Hunt County, Texas.   On or about July 12, 1886, defendant and a man who represented himself as C. C. Williams, came to witness's

butcher shop and offered to sell witness four beeves.  Witness could not remember which of them offered to sell the beeves.  Witness went with them to the O K wagon yard and examined the animals.  He then offered them $44 for the four steers.  They declined that offer at the time, ,but afterwards came to witness and said, "Make it $45 to pay for our horses' feed and dinner for ourselves, and we will trade."  Witness agreed, and his partner and Williams left the shop to drive the animals from the wagon yard to witness's pens.  Witness drew up a bill of sale while they were gone, and requested the defendant to give him the marks and brands of the animals to incorporate in the bill.  Defendant could not give them, and said that Williams would give them when he returned.  Upon his return Williams gave witness the marks and brands, and witness put them in the bill.  He drew the bill to show a conveyance by defendant and Williams jointly, but defendant remarked that he had no interest in the cattle, and the bill of sale was signed by Williams alone.  It was signed "C. C. Williams."  Defendant was in the room when Williams signed it, but witness could not say that he saw the act of signing.  The witness could not remember the descriptions of the animals, but identifying the bill of sale handed to him by the district · attorney as the bill of sale executed to him by Williams, he read the descriptions from it, and pronounced them correct.  About two weeks after this transaction he met the defendant and told him that he had heard some inquiries about the cattle, and that if they were not all right, he, defendant, and Williams would have to straighten the matter.  Defendant replied, "Those cattle were straight.  They were all right.  They came from below Lone Oak, and all this is nothing but old Ice Wallace cutting up a little."  He did not then tell witness that the man C. C. Williams was in reality one Lum Freeze.  The witness, however, ascertained that to be the fact, and when he attended the examining trial of defendant and Freeze, as a witness, he recognized in Freeze the man Williams from whom he bought the cattle.

The State next read in evidence the testimony of the deceased witnesses Austin and Lindsey, as delivered on the examining trial.  Austin testified in substance that he had charge of Mrs. Montgomery's stock.  He missed the animal described in the indictment about the time of the alleged theft of the same.  That animal, prior to that time, ranged about the places of Pounds and Mrs. Freeze.  The witness met the defendant for the first time after he was charged with this offense.  On the Tuesday preceding the examining trial, the defendant told witness that Freeze did not sell the cattle, but that they were sold by C. C. Williams.  Witness asked him where C. C. Williams was, and he replied that said Williams was about Lone Oak.  He afterwards told the witness that Freeze did sell them.

Lindsey testified (on examining trial) for the State that on the preceding Tuesday defendant told him that "C. C. Williams sold the cattle;"

that he could "easily prove himself clear, as C. C. Williams sold the animals;" that he, defendant, "sold them as for C. C. Williams, as he was better acquainted with the butchers than Williams was."

E. H. Stuckey testified for the State that subsequent to his arrest, and while he was at large under bond, the defendant told him that Lum Freeze had nothing whatever to do with the cattle sold to McCray in Greenville; that those cattle were sold by a man named C. C. Williams, who had lived at Frank Hambrick's, but who had then gone west.

George Cooper testified for the State that he and defendant met at the house of George Currant on the day before the Montgomery steer was said to have been stolen. Defendant penned a barren cow at Currant's on that day, and told the witness that he was going to take some cattle to Greenville on the next day. He did not say how many cattle he was going to take, nor who, if anybody, was going with him. State closed.

James Pollard testified for the defense that he lived near Lone Oak, in Hunt County, Texas, and that defendant lived with him in July, 1886. Defendant came home about sundown on the evening of July 11, and remained there over night. Witness did not think the defendant could have left and returned to the house during that night without his knowledge. Lum Freeze came to witness's house about sunrise on the next morning (July 12) and called for the defendant. He told witness that he wanted defendant to help him drive some beeves to Greenville. Witness went to defendant's room, waked him up, and told him that Freeze wanted to see him. Defendant got up, dressed, and helped Freeze pen the cattle. He and Freeze took breakfast with witness, and about thirty minutes later left with the cattle. When witness got up that morning, and went out of his house in response to the call of Freeze, he saw two men riding off in the direction opposite his house. They were too far off for witness to recognize them.

The opinion sets out the testimony of the defendant.

*Perkins, Gilbert & Perkins* and *H. W. Martin,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—Appellant was convicted on the second count in the indictment for receiving and concealing stolen property, knowing the same to have been stolen.

1. Defendant's application for continuance failed to show diligence to procure the attendance of the absent witnesses, and the court was justified in overruling it in the first instance upon that ground. In view of the testimony which was adduced upon the trial the said proposed absent testimony, in so far as the same appears to be probably true, was immaterial, and if adduced would not, in the light of the evidence, be likely

to change the result of the trial. Browning v. The State, 26 Texas Ct. App., 432; Boyett v. The State, Id., 689; Peace v. The State, 27 Texas. Ct. App., 83.

2. Defendant's second bill of exceptions shows that the court permit- ted the State's witness McCray to read from a bill of sale a description. of the cattle therein mentioned and described. There was no error in this proceeding. McCray identified the bill of sale as the one executed to him by C. C. Williams, at the time he purchased said cattle. He, could refresh his memory as to the marks and brands of the animals by said bill of sale. But had there been any virtue in the objection to this testimony, it has lost whatever of merit it might have had by the fact. that the bill of sale itself—the same identified by this witness—was read in evidence to the jury by the prosecution.

3. But defendant objected to the reading in evidence of the bill of sale, as shown by his third bill of exceptions, because said bill of sale was executed by C. C. Williams, or Lum Freeze, who signed the same as C. C. Williams, after the offense charged in the indictment was consummated, and upon the ground that he, defendant, was not a party to, and was not aware of the contents of the instrument. It was shown by the evidence, that this defendant was present in the room, and the bill of sale was a part of the *res gestœ* of the consummation of the crime. The evidence showed a fraudulent conspiracy between the parties to sell or dispose of the stolen animal. In such a case, the acts and declarations of one of the conspirators, even in the absence of the defendant, but before the. consummation of the sale of the property and division of the proceeds, would be legitimate evidence against the defendant. O'Neal v. State, 14 Texas Ct. App., 582. The parties are principal offenders, or acting to- gether, as long as any portion or object of the common design remains. incomplete; in other words, until the full purpose and object of the con- spiracy is consummated and accomplished. Smith v. The State, 21 Texas Ct. App., 107.

4. Defendant's objections to the admission of the written testimony taken on the examining trial of two witnesses who had since died, is with- out merit. No form is prescribed by law for the certificate of an exam- ining court to testimony taken before it. Willson's Crim. Stats., secs. 1768, 2535; Golden v. The State, 22 Texas Ct. App., 1, and Clark v. The State, *ante,* p. 198.

5. Defendant was sworn as a witness in his own behalf. His counsel asked him but two questions, and his testimony in full is that, "at the. time Lum Freeze came to James Pollard's for me, and when I started to help him drive the cattle, I did not know that they were stolen. All I had to do with them was to help Freeze to drive them to Greenville." The State did not cross-examine the defendant. What we have .copied is all that was testified by him. In his closing argument the district at-

torney commented upon the fact that defendant, though he had gone upon the stand as a witness, and had had a chance to explain his connection with the transaction fully, had, nevertheless, failed to do so, and he remarked, "You (the jury) wanted to know all about it. Bob (defendant) would not tell it, though he had a chance to do so." Defendant saved a bill of exceptions to these remarks because "they were contrary to the spirit of the law authorizing defendants to testify in their own behalf." It is insisted that under our statute allowing or permitting a defendant to testify in his own behalf, his failure to testify to any matter about which he does not wish to testify when he has gone upon the stand and testified to such matters as he desired, can not be taken as a circumstance against him, and is expressly prohibited from allusion to or comment upon by counsel. Gen. Laws, 21st Leg., p. 37, ch. 43, sec. 1.

Under similar statutes the rule has been otherwise held. Mr. Wharton says: "This protection, however, from comment does not apply to cases in which the defendant submitting himself as a witness, declines to answer particular questions on the ground of self-crimination, or fails to explain inculpatory facts." Whart. Crim. Ev., 9 ed., sec. 435a, citing The State v. Ober, 52 N. H., 549; Comm. v. Mullen, 97 Mass., 547; Stover v. The People, 56 N. Y., 315.

The identical question here presented came before the Supreme Court of Iowa in the case of The State v. Tatum, and in deciding it they use the following language: "It is conceded that it was the right of the district attorney to comment upon such testimony as the defendant gave, but it is urged that he had no right to comment upon the defendant's failure to testify as to matters regarding which he preferred to keep his mouth closed. The exemption from unfavorable comment extends only to such defendants as choose not to avail themselves of the privilege of testifying in their own behalf. Here the defendant puts himself upon the stand as a witness, and we can see no reason why the counsel for the State should not comment on his testimony as fully as on that of any other witness. By putting himself upon the stand and testifying to material facts in his defense, the defendant waived the protection which the statute accords him." Citing Cooley's Cons. Lim., 317, and note; 59 Iowa, 472. In The State v. Pfefferle (Kansas Supreme Court, Dec. 9, 1886), it was held that "where a defendant in a criminal case takes the witness stand to testify in his own behalf, he assumes the character of a witness, and is entitled to the same privileges and is subject to the same treatment, and to be contradicted, discredited, or impeached, the same as any other witness." See same case reported in full in the 9th Criminal Law Magazine, 222.

After a careful examination of all the matters complained by appellant, and because the trial below appears in all things to have been in

conformity to law, the evidence being sufficient to sustain the conviction, we have found no reversible error. Wherefore the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.