CLYDE BYRD v. THE STATE.

No. 14141. Delivered April 29, 1931.

The opinion states the case.

*R. H. Cocke,* of Wellington, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The conviction was for receiving stolen property and the punishment assessed at two years in the penitentiary.

The indictment in this case contained one count, which charged that the appellant, Clyde Byrd, "did then and there unlawfully and fraudulently receive from M. L. Mooney, one head of cattle then and there belonging to E. W. Blain, and which said cattle had theretofore been acquired by the said M. L. Mooney, in such manner as that the acquisition comes within the meaning of the term theft, and the said Clyde Byrd did then and there fraudulently receive said cattle then and there well knowing the same to have been so acquired."

The State's case was made by the admitted accomplice, M. L. Mooney, who testified in effect that in the fall of 1927, he was living in Oklahoma, about three and a half or four miles east of the Texas state line, and that the appellant at that time was living at Shamrock, in Wheeler County, Texas. He testified that he was acquainted with the appellant at that time and saw him at different times during the fall of 1927. He testified that in the fall of 1927 he had a conversation with the appellant with reference to his handling cattle that he would steal; that said conversation occurred in Collingsworth County near Aberdeen; that the first conversation occurred in October or November, 1927; that he told the appellant he would go down in Oklahoma and see one George Bliss about stealing some cattle; that he had to be with George to get the cattle out of there. The substance of the understanding between the said Mooney and appellant was that said Mooney would go into Oklahoma and steal some cattle and bring them into Texas and deliver them to the appellant, and that the appellant was to sell the cattle and receive five dollars a head therefor; that in pursuance of this agreement, he, Mooney, and one Knight went into the State of Oklahoma and stole 28 head of cattle, the greater portion of which belonged to one Blain; that the cattle were

driven across the state line, placed in a pasture and appellant notified thereof; that appellant sold four head of the cattle and the price agreed upon as between himself and the accomplice for the four head was $50.00 apiece, and that in consequence of their agreement the appellant paid him $180.00; that appellant sold these cattle and subsequently sold about 23 other head to a man by the name of George for $800.00, for which the said Mooney received $685.00 from appellant, which was his part coming from said cattle under their agreement. He further testified that just before he went into Oklahoma and got the cattle that the appellant asked him when he would go and he told him that he would go tomorrow; that he further told the appellant that he was going to get the cattle and asked him how many to get and the appellant said it didn't make any difference and asked the witness to let him know when he got back. He further testified that the appellant never bought any of the cattle from him; that he took the cattle and got the money out of them and sent the witness his part of it; that he did not sell the cattle to Clyde Byrd, and that said Byrd did not have any money with which to buy cattle.

The issue raised is whether the evidence proves a case of theft and not one of receiving stolen property. In the case of Smith v. State, 21 Texas App., 107, 17 S. W., 552, the facts showed that Smith and others entered into a conspiracy to steal cattle which were in Erath County, the plan agreed upon being that the others should take possession of the cattle in Erath County and bring them to Parker County and deliver them to Smith, who would remove them to Tarrant County, sell them, and divide the proceeds. This court held Smith to be a principal in the theft because the conspiracy was not completed until the cattle were sold and the selling of them seemed to be Smith's part of the undertaking. The Smith case on page 133 of 21 Texas App., 17 S. W., 552, is a companion case to the one first cited.

In the case of Burow Jr. v. State, 85 Texas Crim. Rep., 140, 210 S. W., 805, Judge Morrow in passing on a motion for rehearing, stated the rule laid down in Smith v. State, supra, to be to the effect that where persons enter into a conspiracy to commit the crime of theft of property, contemplating that one or more of the conspirators shall take the property from the possession of the owner and deliver it to another conspirator not present at the time of the taking to be by him converted, and the proceeds distributed among all, and that when this conspiracy is carried into effect by the taking of the property from the possession of the owner by one or more of the conspirators, delivering it pursuant to agreement to another to be converted by him pursuant to the previous agreement to the end that the proceeds may be distributed, all are principals within the meaning of the statute.

Among cases illustrating the rule prevailing in this State upon this

subject is that of Mason v. State, 31 Texas Crim. Rep., 311, 20 S. W., 564, from which the following quotation is taken: "Again, it is well settled that where it is proved that the persons charged by their act pursue the same object or purpose, one performing one part and another some other part of the same, so as to complete it with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object; and under our statute such acting together would make all principal offenders whether bodily present or not at the place of the offense. And they are all principal offenders when acting together, as long as any portion of the object of the common design remains incomplete; in other words, until the full purpose and object of the conspiracy is consummated and accomplished." Citing Smith v. State, 21 Texas App., 108, 17 S. W., 552; Willey v. State, 22 Texas App., 408, 3 S. W., 570; Neiderluck v. State, 23 Texas App., 38, 3 S. W., 573; Collins v. State, 24 Texas App., 141, 5 S. W., 848; McFadden v. State, 28 Texas Crim. Rep., 241, 14 S. W., 128.

This construction of the statute set out in the cases above cited as to what constitutes a principal has since said cases been accepted and applied by this court as an established interpretation of the statute. For a fuller discussion as to who constitutes a principal within the meaning of the statute, see cases above cited, also opinion on motion for rehearing in the case of Kolb v. State, 88 Texas Crim. Rep., 593, 228 S. W., 210.

Upon this issue the sole question is, do the facts in this case show that the appellant was a principal in the theft of said cattle by reason of the conspiracy to steal the same? The facts in this case show that there was an agreement and understanding between the appellant and the witness Mooney whereby Mooney was to go into Oklahoma, steal some cattle, bring them into Texas and deliver them to appellant. Appellant was to sell the cattle and receive so much per head therefor. This was done and we believe that the appellant was a principal under the rule laid down in the Smith case, supra, because the transaction, as shown by the evidence, was not complete as to any of the conspirators until the cattle were sold and the proceeds distributed.

In the case of Brown v. State, 15 Texas App., 581, it was held that theft and receiving stolen property were separate offenses. See also Gaither v. State, 21 Texas App., 527, 1 S. W., 456; Wheeler v. State, 34 Texas Crim. Rep., 350, 30 S. W., 913; Fernandez v. State, 25 Texas App., 538, 8 S. W., 667; Kaufman v. State, 70 Texas Crim. Rep., 438, 159 S. W., 58. "A theft must be perfected before that of receiving stolen property can be perpetrated and the receiver of the stolen property must be another person than the thief." Brown v. State, supra. The guilty receiver of stolen goods cannot himself be the thief, nor can the thief be guilty of the crime of receiving stolen goods which he himself

has stolen. Moore v. State, 83 Texas Crim. Rep., 302, 203 S. W., 51; Crawford v. State, 31 Texas Crim. Rep., 51, 19 S. W., 766.

We are of the opinion that the uncontroverted evidence shows, if true, that the appellant was a principal in the theft of the cattle and being a principal to the theft, he cannot be guilty of the crime of knowingly receiving said stolen cattle and can only be convicted of the offense of which the evidence shows him guilty and for this reason the judgment of the trial court cannot be sustained.

Appellant also raises the issue that the testimony of the accomplice witness, Mooney, showed the taking of the cattle charged in the indictment to be in the State of Oklahoma and that there is no proof that the taking of said cattle, as taken in the State of Oklahoma, was a felony under the laws of said State or constituted the crime of theft therein. Upon examination of the statement of facts, we note that it does not contain the laws of the State of Oklahoma and there is no proof that the taking of said cattle in the State of Oklahoma constituted the crime of theft therein. Under Article 1559, P. C., it is made an offense, among other things, to bring into this State any property acquired by theft and that the parties so bringing said stolen property within the State shall be punished as if the offense had been committed in this State. Article 1560, P. C., of the statute provides that "to render a person guilty under the preceding article it must appear that by the law of the foreign country, state or territory from which the property was taken and brought to this State the act committed would also have been theft. See Fernandez v. State, 25 Texas App., 538, 8 S. W., 667; Clark v. State, 27 Texas App., 405, 11 S. W., 374; West v. State, 27 Texas App., 472, 11 S. W., 482.

The other alleged errors complained of we deem unnecessary to discuss under our holding.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.