JACK PEDDY v. THE STATE.

No. 15386. Delivered June 1, 1932.
State's Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 331.

The opinion states the case.

*Dallas Ivey,* of Center, for appellant.

*Benjamin Woodall,* County Attorney, of Marshall, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Conviction is for accomplice to the offense of robbery with firearms; punishment, confinement in the penitentiary for life.

The only matter presented for review under the record is the sufficiency of the evidence to support the conviction, and the sufficiency thereof depends upon whether there is sufficient evidence to corroborate the accomplices testifying in behalf of the state.

The prosecution was for the robbery of the bank at Elysian Fields which occurred between 3:30 and 4 o'clock p. m. on November 19, 1931. That the bank was robbed is conclusively proven by the parties in the bank at the time, and that Henry McCauley and Angelo McCauley committed the robbery is also established not only by the parties who were robbed but by the robbers themselves, who testified as witnesses in behalf of the state. Both Henry and Angelo McCauley had plead guilty to the robbery and their punishment had been assessed at 15 and 20 years respectively.

Henry McCauley, one of the two McCauley who robbed the bank, testified that he lived six miles from Center in Shelby county, Texas, and that Angelo McCauley, his first cousin, lived about a mile from him; that he had known the appellant, Jack Peddy, about a year prior to November 19, 1930, and on Tuesday before the bank was robbed he saw him in the town of Center and had a conversation with him. He also testified that on that night the appellant and Angelo McCauley and himself were at the witness' house and talked over the matter of robbing the bank at ·Elysian Fields. On the next day they met by agreement and went to Elysian Fields in a Chevrolet two-door coach, which the appellant told them belonged to one Riley, and appellant drove the car; that they went from Center to Teneha and then to Carthage and then to Elysian Fields and looked the bank over at Elysian Fields, and they had an agreement that the witness and his cousin would meet the appellant in Center the following morning, and when they met in Center they went over to Flem Ferguson's house, who lived in flat wood country, where J. W. Flow was, about 11:30 on Thursday morning; that the appellant put the wit-

ness and his cousin out of the car about 400 yards from the house because, as he stated, he did not want them to go to the house where Ferguson could see them; that the appellant then went on up to Ferguson's house, and when he came back he told them that he had sent Ferguson off to get some gas because he did not want him to see the parties there; that after Ferguson had left, they ate dinner and Flow showed them a car, which they were to use, and that the pistols used in the robbery were in the car, which was a Ford coupe, and that the appellant furnished them the guns; that he and his cousin got in the Ford car and started off and Flow followed them in another car because he was to pick them up where the appellant said they should leave the car after the robbery; that it was understood before they left that the Ford car should be left in the neighborhood of the gravel pit in the woods and after the robbery it was left where agreed upon; that J. W. Flow met them at the place designated and they got in the automobile with Flow and went about a mile and got out; that he rode in the rumble seat and could not be seen under the turtle back; that his cousin, Angelo, and J. W. Flow were on the front seat; that they then got out and went into the woods and he did not see the appellant until that night over on the highway between Teneha and Joaquin about two miles out of Joaquin at a bridge; that they went from there to Teneha and from there to Center and from there out to the Arcadia road, all in the same automobile; that they went to a house out there about 2:30 in the morning and divided the money.

Angelo McCauley, another accomplice, testified substantially to the same effect, and the accomplice, J. W. Flow, also testified as to what part he took in the transaction.

The testimony of these accomplice witnesses, if true, establishes the guilt of the appellant of the offense charged. Considering the corroborative evidence to the point where it tends in any way to connect the appellant as an accomplice to the offense, we note the following: The state's witness, Monroe Rudd, testified that on Tuesday night before the robbery of the bank on Thursday, appellant and Henry McCauley came to his filling station, driving a two-door Chevrolet, and he tightened the brakes on said car for the appellant; that it was just after dark. To the same effect was the testimony of Oscar Rudd.

A witness by the name of Ray Dickson testified for the state that he lived three miles southeast of Joaquin in Shelby county, Texas; that he had known the appellant for about 15 months and also had known J. W. Flow for about four years; that on Thursday night following the robbery, he saw J. W. Flow and the defendant, Jack Peddy, in a ditch in a car and he pulled them out; that the car was a Chevrolet coach; that it was between 9 and 10 o'clock when he pulled them out of the ditch.

Allan LaGrone testified that he lived in the southern part of Panola county and he knew a road leading from DeBerry to Elysian Fields, and

that on Sunday after the robbery he discovered a Ford coupe near a gravel pit about 200 yards out in the woods from the highway in an old log road; that he found it about an hour after sundown.

The state's witness G. S. Knight testified that he lived fourteen miles south of Carthage in Panola county and had known the appellant for about twenty years; that on the day the Elysian Fields bank was robbed, he met the appellant in the road and appellant was driving a Chevrolet car; that there was no one with him when he saw him; that he saw the appellant about 8:30 or 9 o'clock, and later in the day he saw him again about five miles south of Carthage with three others in a Chevrolet automobile and they were going north towards Carthage, and on that same day he saw the appellant about fifteen miles south of Carthage on No. 8 highway traveling south in a Chevrolet car and at that time he was alone; that that was about 4:30 or 5 o'clock p. m.

W. M. Shoffner testified for the state that he lived in Shelby county and had known the appellant for about six months and knew about the time the Elysian Fields bank was robbed; that before that time he saw Jack Peddy, the appellant, and one of the McCauley boys at his filling station one night, and he sold the appellant some gas; that he did not remember the kind of car they were in and he couldn't tell how many days it was before the robbery at Elysian Fields.

The witness W. I. Edison testified that he was raised with Henry McCauley and lived in the same community and knew the appellant when he saw him and recalled when the bank was robbed on Thursday; that he saw the appellant Wednesday morning at Ward's store across from the courthouse at Center and Henry McCauley was talking to appellant. He testified that it was nothing unusual to see the appellant in Center.

The state's witness Morris Baker testified that he lived at Center, and on the 19th day of November, 1931, he ran a filling station, and he saw Henry McCauley the day the bank was robbed on the back seat of a car and there were two other parties in the front seat but he did not know who they were; that Henry McCauley was lying down on the back seat of the car as it passed his filling station; that they were in a Chevrolet car, and after they passed he saw Henry McCauley get up.

Frank Navarro testified for the state that he lived at Lufkin, Texas, and he saw the appellant at Lufkin; that he heard about the Elysian Fields bank being robbed and heard them talking about it with that boy there; that he did not know whether his name was Angelo McCauley or not. He further testified that he saw the appellant in Lufkin several days after the robbery and he was with one of those boys; that he came to his house and talked to him about going with him; he did not say where; that he saw him the next day at his house and he told him he wanted him to go to Mexico with him and have a good time; that the witness would be his interpreter and talk Spanish; that he brought him from Lufkin to

Cromo; that he got a gun from the pocket of appellant's car because he was afraid of the appellant; that the appellant saw him take the gun and did not say anything to him. He also testified that the pistol shown him was the pistol he took from the car appellant was driving.

Appellant offered testimony, which, if true, established a complete alibi for him on the day and night of the robbery of the bank. Appellant strenuously insists that the evidence is insufficient to corroborate the accomplices. We are of the opinion, after seriously considering the testimony, that the contention should be sustained. Article 718, C. C. P., provides in substance that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the accused with the offense committed, and the corroboration is not sufficient under the statute if it merely shows the commission of the offense. The law demands that the corroboration, with some degree of cogency, tends to establish facts material and relevant which would authorize the jury to credit the testimony of the accomplice. Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170. In testing the sufficiency of the evidence offered to corroborate an accomplice, this court has often resorted to a consideration of the corroborative evidence alone in order to see if there be in such evidence any fact which tends to point to the accused as the defendant. Townsend v. State, 90 Texas Crim. Rep., 552, 236 S. W., 100.

The testimony offered by the state to corroborate the accomplices merely showed that the parties had been seen together prior to the time of the alleged commission of the offense. It is a rule that the accomplice may state any number of facts and these may all be corroborated by the evidence of other witnesses, but if the facts thus corroborated do not tend to connect the accused with the crime, the corroboration does not meet the requirement of the statute. Welden v. State, 10 Texas App., 400; Jones v. State, 59 Texas Crim. Rep., 559, 129 S. W., 1118.

We believe the testimony is insufficient to corroborate the accomplice testimony.

The judgment is reversed and remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, Presiding Judge.—The county attorney has shown commendable zeal and research in preparing the state's motion for rehearing.

The statute, article 718, C. C. P., 1925, does not attempt to define the word "tending" to connect the defendant with the offense committed,

but only limits it with the statement that testimony which merely shows the commission of the offense is not sufficient corroboration. The members of this court have often been perplexed to know whether the corroboration in a given case is sufficient. The cases to which reference is made in the original opinion, namely, Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170; Townsend v. State, 90 Texas Crim. Rep., 552, 236 S. W., 100, and the case of Minor v. State, 108 Texas Crim. Rep., 1, 229 S. W., 422, referred to by counsel, are but illustrations of the efforts of this court to solve a difficult problem. In the last analysis, however, the matter of the sufficiency of the corroboration, especially when, as in the present case, circumstances alone are relied upon, must be decided upon the facts before the court in the particular instance. As applied to the present appeal, the evidence is not deemed such as to meet the demand of the statute cited above. See Noble v. State, 100 Texas Crim. Rep., 404, 273 S. W., 251.

The motion is overruled.

*Overruled.*