JOE MCINNIS V. THE STATE.

No. 15338. Delivered November 2, 1932.
Reported in 54 S. W. (2d) 96.

The opinion states the case.

_Earl Shelton_, of Austin, for appellant.

_Lloyd W. Davidson_, State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for receiving stolen property, punishment being assessed at five years in the penitentiary.

The indictment contained two counts, the first charging by proper averments that appellant received from Russell Haskett diamond rings and a watch which had been stolen from J. A. Jackson. The second count charged appellant with the theft from Jackson of the property mentioned. The case was submitted on the first count.

Appellant presents his appeal on two propositions: First, that under the evidence, if appellant could be convicted at all, it would be as a principal to the theft and not as a receiver of stolen property. Our state's attorney admits the soundness of this contention. Second, that there is no such corroboration of the accomplice witnesses as is demanded by the statute, article 718, C. C. P. Both propositions demand an analysis of the evidence.

Among witnesses for the state were Russell Haskett and Jake Alterman. The trial judge correctly treated them as accomplices as a matter of law, and properly instructed the jury of the necessity of their corroboration.

The testimony of J. A. Jackson was that he was in the jewelry business in the City of Austin; that shortly after 9 o'clock on the night of September 27th, 1931, he discovered that his store had been entered through the skylight and property of the value of five thousand dollars, consisting of ten diamond rings, a watch, chain, and a knife, were stolen. Nine of the rings and the watch were returned by Mr. Thorp, chief of police of the City of Austin. Mr. Jackson knew nothing of the parties committing the burglary, nor where Mr. Thorp obtained the returned property.

According to Haskett's testimony, he, appellant, and Bourland, before the burglary and theft had an understanding—or stated otherwise—had entered into a conspiracy, regarding the burglary of the Jackson store. Haskett was to actually enter the store and secure the property and turn it over to appellant and Bourland, who would dispose of it and give to Haskett a certain per cent of what was received from it. Haskett admit-

ted that, in carrying out his part of the conspiracy, he entered the store through a skylight, stole the property, went out the back door, and hid the property back of the Bon Ton Cafe; that a few minutes before he entered the store he saw appellant, who said to him, "Go ahead and get it, you haven't got so much time"; that after he hid the property behind the cafe he met appellant and Bourland, who asked him where the "stuff" was; that they went and looked at the property and Haskett was directed by appellant and Bourland to meet them at the park on Fifth street, which he did; that the three of them got in a car which one Johnson was driving and went to San Antonio, where they went to a hotel operated by Alterman. Haskett said he did not know Alterman and had never seen him. They were assigned to rooms by a negro porter. Hackett testified that, before they got to San Antonio, the property was hidden under a bridge, and that he had nothing further to do with the property, and had never received from appellant or Bourland anything for his part of the job.

Hilario Carter and Henry Hines were negro porters working at the hotel in San Antonio operated by Alterman. From the testimony of these two porters we learn only that Haskett, appellant, Bourland, and Johnson, came to the hotel about 3 or 3:30 in the morning of September 28th, 1931, and registered under assumed names and were assigned by one of the porters to two rooms in the hotel. One of the porters said he had never seen the parties before then, but that some two or three days later they again registered at the hotel for one night. One porter testified that appellant inquired of him twice for Mr. Alterman. These porters evidently knew nothing about the stolen property as they gave no testimony whatever in regard to it. Alterman testified that he saw appellant in San Antonio on September 28th and 29th and that Bourland was with him; that he had a conversation with them in regard to some jewelry; that they did not have the jewelry with them the first time he talked to them; that they wanted him to get some money for them on the jewelry; that they later brought the jewelry to him. He claims they only had eight rings and a watch and chain. He said appellant and Bourland were present at the time the jewelry was turned over to him, and that he gave them $350, claiming to have pawned three of the rings. This witness said he did not remember who he borrowed the money from, but that it was "some fellow in San Antonio." Alterman seems not to have known Haskett in the transaction at all, at least, he makes no mention of ever having seen Has-

kett, either alone or in company with appellant and Bourland. Alterman said he turned all the property he got from appellant and Bourland over to Chief of Police Thorp. The testimony of the officers throws very little light on the transaction. Mr. Thorp testified that, as chief of police of the City of Austin, he made a personal investigation in regard to the burglary of the Jackson store; that in some dust on top of a dresser he found the heel mark of a shoe which had the name "Mohican" on it; and that later they took a shoe off of Haskett that corresponded with this heel mark in name and other particulars. He further stated he got the property which he turned back to Mr. Jackson from Alterman in San Antonio. The sum total of his testimony amounts only to the discovery of circumstances which pointed to Haskett as the thief, and which added nothing to the record in so far as the connection of this appellant with it was concerned, because Haskett already had admitted upon the witness stand his connection with the transaction. One Margos testified that he operated a domino hall in Austin, not very far from the Jackson store; that he recalled having seen Bourland and appellant on the sidewalk in front of his place on the night of the burglary; that Bourland came into his place and asked permission to leave a package there, and returned in about twenty minutes and got the package, saying he had a "black-jack" in it. If Haskett was with appellant and Bourland the witness fails to make mention of it. The testimony of Detective Fowler developed only the fact that, after he heard of the burglary of the Jackson store, he went to Margos' domino hall, but failed to find Bourland or appellant and did not see them in Austin that night, although he looked for them.

If Haskett's testimony alone could establish appellant's connection with the transaction, it showed a conspiracy between him, appellant, and Bourland which contemplated the theft of the property from Jackson's, the sale of it, and the division of the proceeds. Haskett was to do the actual stealing, but the conspiracy was not yet ended; appellant and Bourland were to dispose of the property, in which they acted for Haskett as well as themselves, as Haskett was to receive a percentage of the proceeds. Appellant, while not present when the theft was committed, subsequently performed his part under the conspiracy agreement. The fact that he may have failed to pay over to Haskett his part of the money received from Alterman would be immaterial so far as the law is concerned. Under similar facts it has been held many times that accused was guilty as a principal in the theft of the property, and could not

be guilty as a receiver of the property. Smith v. State, 21 Texas App., 107, 17 S. W., 552; Simpson v. State, 81 Texas Crim. Rep., 389, 196 S. W., 835; Burrow v. State, 85 Texas Crim. Rep., 133, 210 S. W., 805; Kolb v. State, 88 Texas Crim. Rep., 593, 228 S. W., 210; Walker v. State, 94 Texas Crim. Rep., 568, 252 S. W., 552; Snider v. State, 119 Texas Crim. Rep., 635, 44 S. W. (2d) 997; Byrd v. State, 117 Texas Crim. Rep., 489, 38 S. W. (2d) 332.

We now advert to appellant's second proposition, viz., his claim that the testimony of the accomplice witnesses was not sufficiently corroborated. Article 718, C. C. P., forbids a conviction upon the testimony of accomplices unless corroborated by other evidence tending to connect accused with the offense committed. That accomplice witnesses can not corroborate each other is so well settled it needs no discussion. Haskett could not corroborate Alterman. Neither could Alterman corroborate Haskett. It therefore becomes necessary to look to other witnesses in search of evidence to discover if any may be found which tends to connect appellant with the offense of which he was convicted. Evidence which corroborates the accomplice witnesses only on immaterial facts is not sufficient. To meet the requirements of the statute it must be as to some criminative fact which tends to connect accused with the commission of the offense charged. Welden v. State, 10 Texas App., 400; Boone v. State, 90 Texas Crim. Rep., 374, 235 S. W., 580; Durham v. State, 106 Texas Crim. Rep., 85, 290 S. W., 1092; Turner v. State, 108 Texas Crim. Rep., 486, 1 S. W. (2d) 642. The corroboration may, of course, consist of proven circumstances, as well as direct evidence, and, where the state relies upon circumstances proven by various non-accomplice witnesses, the rule has been stated in Minor v. State, 108 Texas Crim. Rep., 1, 299 S. W., 422, as follows: "It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that before the jury there was proof confirming the testimony of the accomplice (witness) to material facts tending to connect the accused with the * * * offense, the law is satisfied."

Of course, it must be understood in this connection that the combined and cumulative testimony of the nonaccomplice witnesses would not be as to material facts, unless the facts established by this combined and cumulative testimony were of a criminative character, that is, such as tended to connect accused with the commission of the offense charged.

Looking to the testimony of the nonaccomplice witnesses, we confess our inability to find evidence which measures up to the demand of the law with reference to corroboration. The combined testimony of all the nonaccomplice witnesses established the following facts and circumstances only: First, that appellant and Bourland were seen in Austin on the night of the burglary at about 9 o'clock; second, that about 3 o'clock the next morning Haskett, appellant, Bourland, and Johnson registered under assumed names at a hotel in San Antonio operated by Alterman; third, that the next day or the day following appellant made inquiry of one of the porters for Alterman; fourth, that the officers recovered the stolen property from Alterman; fifth, that marks of a shoe track were found in dust in the Jackson store which were circumstantially shown to have been made by a shoe worn by Haskett. Outside of registering in San Antonio under an assumed name, and that appellant and others were in company with Haskett in San Antonio, and that appellant made some inquiry concerning Alterman, we find no evidence from nonaccomplice witnesses which could be said to raise a suspicion against appellant of wrong doing of any kind; to our minds it falls far short of establishing any criminative or material fact which tends to connect appellant with the offense committed. Weathered v. State, 100 Texas Crim. Rep., 199, 272 S. W., 471; McClure v. State, 89 Texas Crim. Rep., 407, 231 S. W., 774; Johnson v. State, 84 Texas Crim. Rep., 400, 208 S. W., 170. The state is necessarily thrown back on the evidence alone of the two accomplice witnesses, Haskett and Alterman, to show any connection of appellant with the crime. This being true, the mandate of article 718, C. C. P., prohibits this court from permitting the conviction to stand. Both propositions advanced by appellant appear to be sound.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*