## DALLAS RANDALL v. THE STATE.

No. 18897.  Delivered March 24, 1937.

The opinion states the case.

*Brooks & Little,* of Big Spring, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for robbery, punishment being five years in the penitentiary.

Appellant, W. R. Quillan and John Durham were jointly indicted for the robbery of George Whittaker on July 5, 1936. At the time of trial Quillan, we presume, had not been arrested. A severance between appellant and Durham was granted, appellant alone being tried. At the conclusion of the State's evidence appellant moved for an instructed verdict, claiming that the evidence was insufficient, the claim turning on the contention that Durham's testimony was not corroborated as required by Art. 718, C. C. P. Durham was an accomplice witness, having "turned State's evidence." The article reads:

"A conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The sole question being whether *any* corroborating evidence may be found in the record which measures up to the requirements of said article, we eliminate from consideration for the time being the testimony of the accomplice witness, and then look to the evidence of the other witnesses to ascertain if in their testimony may be found any fact which tends to connect appellant with the commission of the robbery. See 18 Tex. Jur., Sec. 160, p. 263, and Sec. 167, p. 276 with cases cited thereunder.

On the night of the robbery, July 5th, a poker game was in

progress in Coahoma, Howard County, Texas. A number of parties were engaged in the game, but only two of them—George Whittaker and D. C. Dollins—were called by the State to testify. Their evidence, condensed, shows that about nine-thirty o'clock at night two masked men with pistols entered the room where the game was in progress, ordered the players to stand against the wall with hands up. The robbers were completely masked, with ladies ribbed stockings pulled over their heads, the only openings being for the eyes, the entire head and face being concealed except the eyes. About the only description witnesses could give of the robbers was that one was tall and the other short. They wore blue overalls and jumpers, and one of them was wearing a soiled light-colored hat. Thirty-five dollars were taken from Whittaker. Among other things taken from Dollins were three or four dollars in nickels which were in a sack. A bill-fold and some other articles were also taken by the robbers. Neither of the witnesses could identify appellant as one of the robbers, Whittaker saying that he could not testify even that appellant was the size of either of them. Mrs. Watkins operated an all-night cafe at Seminole some ninety miles from Coahoma. About three o'clock on the morning of July 6th three men went into her cafe and she served them with something to eat, which was paid for in nickels. She identified appellant and Durham as two of the parties. It was Durham who paid the bill in nickels, not this appellant. Witness also exchanged for Durham three or four dollars in nickels, giving him therefor dollar bills. Mr. Price, a deputy sheriff, was in the cafe and he also identified appellant and Durham as two of the parties. Two of the three were tall men and the other smaller. The evidence shows that Durham and Quillan were each about six feet, one inch tall, and appellant about five feet, eight inches. Officers testified to finding some six or seven miles north of Coahoma two pairs of blue overalls, two jumpers, and a light-colored hat. These clothes were similar to those worn by the robbers of the poker players, but could not be identified any nearer than as being similar. A bill-fold and the money sack in which the nickels were taken away from the scene of the robbery were also found with the clothing mentioned.

We have failed to find in the evidence so related any criminative fact which tends to show that appellant participated in the poker game hold-up. If we could look to Durham's testimony alone, he makes out a case, but the statute does not permit us to look alone to his evidence. He testified that he, ap-

pellant and Quillan agreed to rob the poker game and drove to the scene in witness' car; that witness waited in the car a short distance away while appellant and Quillan committed the robbery, and the three then drove north and when about six or seven miles from Coahoma the clothing, bill-fold and money sack found by the officers were thrown out of the car; that they then went to Seminole, where they got something to eat. Witness admitted that he was the party who had changed the nickels, which he said were the ones taken in the robbery. He claimed that appellant and Quillan gave him $20 for his part of the proceeds of the robbery.

It will be seen that the evidence of other witnesses corroborates Durham on the proposition that two men perpetrated the robbery, and that the robbers—whoever they may have been—discarded the clothing, bill-fold and money bag at the point where the officers found them, but nowhere does the non-accomplice evidence tend to connect appellant with the incident. As was said by the court in Chambers v. State, 44 S. W., 495.

"Now, it makes not the slightest difference how thorough the corroboration of the accomplice may be in regard to facts related by him, yet, unless there is some proof, independent of his testimony, tending to connect the defendant with the commission of the crime, there is no sufficient corroboration."

Durham is also corroborated on the point that he, appellant and another party were together in a cafe ninety miles from the scene of the robbery some five hours after its commission, and that Durham had in his possession several dollars worth of nickels claimed by Durham to have been taken in the robbery. No other witness attempts to identify them as a part of the proceeds of the robbery. It is to be regretted perhaps that in view of the number of nickel slot machines generally known to be in operation at this time the possession of such character of money would not carry the significance which otherwise might prevail. The circumstance of the nickels is much like that relied on by the State in Jernigan v. State, 10 Texas Crim. App., 546, where a hundred dollar bill was claimed to be the fruits of crime. However, in Jernigan's case he was in possession of the bill, whereas in the present case the accomplice witness and not appellant was in possesion of the nickels. The corroboration in Jernigan's case was held insufficient. The fact that appellant was seen by non-accomplice witnesses with Durham some five hours after the robbery at a point ninety miles away would not furnish evidence tend-

ing to connect appellant with the robbery. Many authorities might be cited, but the following are deemed sufficient. McInnis v. State, 122 Texas Crim. Rep., 128, 54 S. W. (2d) 96; Willard v. State, 92 S. W. (2d) 251; Rubio v. State, 121 Texas Crim. Rep., 621, 50 S. W. (2d) 294; Hamilton v. State, 122 Texas Crim. Rep., 424, 55 S. W. (2d) 820.

Finding no corroboration of the accomplice witness which measures up to the demands of Art. 718, C. C. P., our duty demands a reversal of the judgment, and it is so ordered.

*Reversed.*