**Mary TREVINO, Juan Trevino, Appellants,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–87–00333–CR thru 04–87–00339–CR.**

Court of Appeals of Texas, San Antonio.

Nov. 30, 1988.

Rehearing Denied Dec. 12, 1988.

**564**

Mark Stevens, San Antonio, for appellants.

Thomas F. Lee, Dist. Atty., Del Rio, for appellee.

Before BUTTS, CANTU and CHAPA, JJ.

## OPINION

CANTU, Justice.

The previous opinion delivered on November 16, 1988 is withdrawn and the following substituted therefor.

This is an appeal from convictions of theft (knowingly receiving stolen property). TEX.PENAL CODE ANN. § 31.03(a), (b)(2) (Vernon Supp.1988). Appellant Mary Trevino was charged with theft in five separate indictments and with engaging in organized criminal activity in another indictment. Her husband, appellant Juan Trevino, was charged with theft in two separate indictments. All causes were consolidated and a single jury trial was conducted. Both appellants were found guilty of all charges against them. The trial court granted a motion in arrest of judgment on the organized criminal activity charge. The court sentenced appellants to seven years' imprisonment.

In September of 1986, five burglaries were committed in Del Rio, Texas by four young burglars working together. On September 7, they burglarized the home of Antonio Gonzales and stole guns, jewelry and cameras. On September 8, they stole televisions and jewelry from the home of Maxine Crossley. On September 12, they burglarized the home of Genaro Martinez and stole a Fisher entertainment center, jewelry, telephones and a telephone answering machine. On September 23, they burglarized a school campus and stole an Apple computer. Finally, on September 24, they stole guns, jewelry and a VCR from the home of Earl Tarbet.

While investigating these thefts, police observed the burglars delivering the stolen property to the home of appellants. A search warrant was executed on appellants' residence and more than 166 items were seized. The four burglars pled guilty and agreed to testify against the appellants. The burglars claimed they sold the stolen property from each burglary to the Trevinos after informing them that the property was stolen.

Appellants appeal each conviction separately and assign three points of error in each appeal. We address all convictions in one opinion. The first point of error in each appeal challenges the sufficiency of the evidence to support each conviction. The second and third points of error are identical in each of the seven appeals. We will address the common points of error first.

### I. *Closing Jury Argument*

Appellants' third point of error in each appeal alleges error in the trial court's overruling of their objection to the prosecutor's closing argument at trial. Appellants allege that the prosecutor's argument injected new and harmful facts into evidence. The specific argument complained of is as follows:

> I wish that I had a good friend, Carl Rolfe, minister over here at the Methodist church, to come over here and tell you oh, yes, I was over at Juan and Mary Trevino's house on the night of September 24th. I heard them; they were talking about receiving stolen property. In fact, I heard Juan talk to Silvester Diaz about whose home you broke into to get this. You know, that would be great evidence if I could get it, but you and I know that is not possible because Carl Rolfe is not a person that would even be there. He's a good, honest man. Good, honest people aren't at the Trevino's home when they are receiving stolen property.

Appellants' objection in response to the foregoing argument was:

> [Defense Attorney]: Your Honor, we'll object to that statement that good,

honest people are not in the Trevinos' home, and ask that the jury be asked to disregard that gratuitous insult.

The objection clearly complained of the insulting character of the argument. It was not directed at the claimed injection of new and harmful facts into evidence now brought forth on appeal.

■ Claimed error on appeal must comport with the objection voiced at trial. Failure to bring forward the same claimed error presents nothing for review. *Graham v. State*, 546 S.W.2d 605, 608 (Tex. Crim.App.1977).

Nevertheless, the record shows that such argument was not manifestly improper.

■ The Texas Court of Criminal Appeals has established guidelines for permissible jury arguments. The areas of argument allowed are: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W. 2d 230, 231 (Tex.Crim.App.1973). Appellants allege that the argument pertaining to Carl Rolfe does not fall within these permissible areas of argument, and that the argument was the first mention of this person in the record. They further argue that there was no evidence that Rolfe really existed, that he was a minister, that he was a "good, honest man," or that he would not visit the Trevino home.

■ In support of their position, appellants cite *McKenzie v. State*, 617 S.W.2d 211, 218–21 (Tex.Crim.App.1981). We find the facts of *McKenzie* distinguishable from the instant case. The appellant in *McKenzie* had been convicted of indecency with a child, when at the punishment phase the prosecutor noted that the appellant had not presented any character witnesses. He suggested to the jury that the appellant should have called his minister to say he was welcome in church; his old college classmate to say they were still friends, his employer to say he was welcome back at work, a neighbor to say he was still welcome in the neighborhood; and finally "a parent … to say they'd make a little girl

available to molest." The Court of Criminal Appeals found that these comments were outside the record, uninvited, and made solely for the purpose of branding the appellant as an outcast. *Id.* The court found that the prosecutor's argument in *McKenzie* was an injection of personal opinion which was manifestly improper, harmful and prejudicial. *Id.* at 221; *see also Vineyard v. State*, 96 Tex.Crim. 401, 257 S.W. 548, 550 (1922).

In the present case, however, the prosecutor's arguments were directed not at which witnesses *appellants* should have called, but instead at which witness the *prosecutor* would like to have called. In context, the prosecutor was not attempting to portray appellants as social outcasts, but was attempting to reply to appellants' previous jury argument that appellants had shown lack of knowledge that the property was stolen by demonstrating that they had had visitors in their home on September 24.

The argument in the present case was not made for the same purpose as that in the *McKenzie* case, and was not manifestly improper.

The trial judge found that the argument, in context, was reasonable when he responded to appellants' objection as follows:

THE COURT: No, I think you have got to take the whole thing in context, taking it in context. Overruled.

■ We find that the argument made by the prosecutor was invited by appellants' argument. According to the invited argument doctrine, when the defense argument goes outside the record, the prosecution may go outside the record to respond to that argument. *See Walker v. State*, 664 S.W.2d 338, 340 (Tex.Crim.App.1984) (en banc); *Johnson v. State*, 611 S.W.2d 649, 650 (Tex.Crim.App.1981).

A major issue throughout the trial was whether appellants knew that the property they purchased was stolen. During trial, Police Detective Becerra testified that he observed a known burglar drive to appellants' house and carry a VCR and other property into the house. Becerra noticed a car belonging to someone named Luna

parked in front of appellants' house and guessed that the burglars would not negotiate the sale of the stolen property at that time. As predicted, the burglars left appellants' home, but returned later.

During closing argument, the defense attorney argued:

If they really knew they had stolen property, would they have it in their livingroom? In fact, the testimony of the officers showed they had company there in their house the very night they were talking about the Luna's—or whoever those folks may have been, but the point is there was company that night, and presumably on many other occasions people were in their house, just like yours or my house. That, of course, is evidence that they didn't know it was stolen.

Later, during closing arguments, appellants' attorney again argued that the presence of a third party in appellants' home was evidence that appellants did not know they were dealing with stolen property.

Luna did not testify at trial, nor was there any evidence as to who Luna was or what his or her relationship was to appellants. Appellants' attorney reached outside the record when he argued that the Lunas' presence was evidence that appellants did not know the property was stolen. Until that time, there had been no evidence as to whether the Lunas' presence had any bearing on appellants' knowledge. Since there was *no* evidence of the relationship between appellants and Luna, appellant's closing argument cannot be considered a "reasonable deduction from the evidence." *Cf. Frazier v. State*, 480 S.W.2d 375 (Tex. Crim.App.1972); *Archer v. State*, 474 S.W. 2d 484 (Tex.Crim.App.1971).

Thus, appellants' closing argument invited a response from the prosecutor. The prosecutor was entitled to respond to the unsupported statement that the Lunas' presence was evidence of appellants' innocence. In context, this is exactly what the complained of argument sought to do. The prosecutor's argument suggested that any third party observer inside appellants' house might be involved in the crime, and that rarely would an unimpeachable witness, such as a minister, observe such a crime and be available to testify about it. We find that the prosecutor's argument was a direct response to the defense argument, and was invited. *Cf. Turner v. State*, 482 S.W.2d 277, 279 (Tex.Crim.App. 1972); *Miller v. State*, 479 S.W.2d 670, 672 (Tex.Crim.App.1972). Oratory style, picturesque language, analogies, allegories, and presentation of examples by the use of commonly recognized facts to illustrate a point, are available for use in jury arguments.

Moreover, even if the prosecutor's argument was erroneous, we do not believe it calls for reversal because we cannot perceive that it caused any harm. As the court stated in *Vineyard v. State:*

We think the only safe rule to be that this court should not hold an argument to be reversible error unless it is in extreme cases where the language complained of is manifestly improper, harmful, and prejudicial, or where a mandatory provision of the statute is violated, or some new and harmful fact is injected into the case.

257 S.W. at 550.

Appellants' third point of error is overruled.

## II. *Pre–Sentence Investigation Report*

■ Appellant's second point of error complains that the trial court erred in not requesting a pre-sentence report by the probation officer prior to imposition of sentence.

TEX.CODE CRIM.PROC.ANN. art. 42.-12, § 4 (Vernon 1979) originally provided in pertinent part:

Sec. 4. *When directed by the court,* a probation officer shall fully investigate and report to the court in writing the circumstances of the offense, criminal record, social history, and present condition of the defendant. Whenever practicable, such investigation shall include a physical and mental examination of the defendant ... (Emphasis added)

On May 25, 1983, § 4 of article 42.12 was *amended* by Tex.H.B. 1178, ch. 343, § 1,

1983 Tex.Gen.Laws 1790, to read in pertinent part, as follows:

Sec. 4(a). Except as provided by Subsection (b) of this section, *prior to the imposition of sentence by the court* in a criminal case *the court shall* direct a probation officer to report to the court in writing on the circumstances of the offense with which the defendant is charged, the criminal and social history of the defendant, and any other information relating to the defendant or the offense requested by the court ... (Emphasis added)

On May 25, 1983, Tex.S.B. 1, ch. 303, § 9, 1983 Tex.Gen.Laws 1568, 1587 was enacted as an amendment to section 4 of article 42.12. That amendment in addition to adding new provisions, reenacted the original text of section 4.

On September 19, 1984 the Court of Criminal Appeals decided the case of *State ex rel. Turner v. McDonald,* 676 S.W.2d 375 (Tex.Crim.App.1984) in which it held that H.B. 1178 and S.B. 1, both enacted in 1983, were inconsistent and irreconcilable.

In resorting to the Code Construction Act, the Court stated:

... with an exception not here applicable, ... if amendments to the same statute are enacted at the same session, one making no reference to the other, they shall be harmonized if possible to give effect to each; but if irreconcilable, 'the latest in date of enactment prevails,' Article 5429b–2, § 3.059(b), V.A.C.S. For reasons about to be explicated, we are unable to harmonize § 4 as reenacted by section 9 of chapter 303 (S.B.1) and § 4 as enacted by section 1 of Chapter 343 (H.B. 1178), and we find them irreconcilable.'

The end result was that the original text of section 4 of article 42.12, as reenacted by S.B. 1 giving the trial court discretion to request an investigative report, is the law presently in effect.

Thus section 4(a) now in effect leaves the ordering of a pre-sentence investigation within the discretion of the trial court in the same manner as does TEX.CODE CRIM.PROC.ANN. art. 37.07 § 3(d) (Vernon Supp.1988).

Present law places discretion upon the trial court to request or not request an investigative report. Because the trial court was under no legal duty to do so a failure to do so cannot constitute error.

After a jury found appellants guilty the trial court reconvened for the punishment phase without aid of the jury. The State offered no evidence and rested. Appellants offered the testimony of three witnesses including that of appellant Mary Trevino. The trial court then assessed punishment at seven years' confinement in the Texas Department of Corrections and ordered a pre-sentence investigation. On May 11, 1987, the court reviewed the pre-sentence reports, heard argument by counsel for both parties, and afforded appellants their allocution rights. The trial court denied probation and sentenced each appellant to a term of seven years' imprisonment.

Appellants' argument is that when the trial court "fixed" punishment, before ordering the pre-sentence report, he violated TEX.CODE CRIM.PROC.ANN. art. 42.12, § 4(a) (Vernon Supp.1988).

As hereinabove pointed out, the trial court was under no obligation to request an investigative report prior to assessing punishment. It was however, within the discretion of the trial court to request and use one in determining whether to grant probation. Clearly this is what the trial court did.

Moreover, appellants' complaint centers around an alleged failure of the trial court to permit them to present mitigating evidence by way of the probation officer's report prior to sentencing. The record clearly reflects that appellants were afforded every opportunity to present whatever mitigating evidence they deemed necessary.

At the punishment phase only appellants proffered mitigating evidence. Again at the sentencing hearing appellants were given the opportunity to offer whatever evidence they thought appropriate following a review of the pre-sentence report:

THE COURT: All right. Well, I believe that you gentlemen have each received a copy of the pre-sentence investigation that has been prepared by the Adult Probation Department. A copy has been received by the court as to each defendant, and then I'll entertain any statements that you gentlemen care to make on behalf of your party.

\* \* \* \* \* \*

[Defense Counsel] MR. UNDERWOOD: Your Honor, we have nothing further to present other than the motion in arrest of judgment in cause number 5702 ...

Each appellant was then afforded his allocution rights immediately prior to being sentenced.

We find nothing in the record that supports appellants' contentions that they were harmed by the procedure employed by the trial court. Indeed no effort was made by either appellant to make the pre-sentence report a part of the record. We are, thus, unable to verify what mitigating evidence appellants sought to bring before the trial court, if any there was.

The record is clear that the trial court considered the report in deciding against probation as it had discretion to do. Appellants' point of error two is overruled.

*Sufficiency Challenges*

Cause Nos. 04–87–00333–CR
04–87–00334–CR
04–87–00335–CR
04–87–00336–CR
04–87–00337–CR

■ Appellant Mary Trevino alleges that the evidence was insufficient to prove beyond a reasonable doubt that she unlawfully appropriated specified property from specified complainants as charged in the various indictments.

Appellant did not testify at the guilt/innocence phase of the trial but rested and closed together with her husband following the State's termination of its proof.

At the punishment phase, however, appellant Mary Trevino voluntarily elected to take the stand in mitigation of punishment.

On cross-examination the following transpired:

[PROSECUTOR] Q: If you were so concerned about your children, Mrs. Trevino, tell me why you made a decision that got yourself in so much trouble that you run a risk of going to jail and eventually hurting your children?

A: Well, now that I look back on it, I think, you know, I made the wrong decision, but you know—

Q: Now, you remember dealing with these young men, Juan Kiniskey, Silvester Diaz, Isidro Hernandez, do you not?

A: Yes.

Q: And you heard their testimony concerning the burglaries of these homes and the sale of all these items of property to you. Do you recall that testimony?

A: Yes.

Q: You were dealing with those young men, you and your husband knew you were dealing with stolen property, didn't you?

A: Well, not at first.

Q: Then later on you knew you were dealing with stolen property?

A: When we found out, yes.

\* \* \* \* \* \*

Q: Are you telling me that—at what point in time did you know that you were dealing with stolen property?

A: The third time they went to the houses was the last time.

Q: So there was a point in time in which you had a great—you knew very well that you were dealing with stolen property and buying stolen properties from these young men?

A: The last—at the end.

Q: And you're telling me before that time you had no inkling that these men were selling you stolen property?

A: No, sir.

The last burglary occurred on September 24, 1987, at the home of Earl Tarbet where guns, jewelry and a VCR were taken. This transaction forms the basis of an indict-

ment against appellant Mary Trevino in cause number 5,710 [our 04–87–00337–CR].

On appeal of 04–87–00337–CR appellant challenges the sufficiency of the evidence to support the conviction. In view of the testimony given by appellant at the punishment phase we need not detail the facts supporting the conviction.

■ Where the appellant admits in the penalty stage his commission of the offense charged he cannot complain that there is insufficient evidence to sustain the conviction. *Garcia v. State*, 522 S.W.2d 203, 205 (Tex.Crim.App.1975); *Richardson v. State*, 458 S.W.2d 665, 666 (Tex.Crim. App.1970).

We hold that the above testimony forecloses appellant's challenged to the sufficiency of the evidence in cause no. 04–87–00337–CR. The judgment of conviction in that cause is affirmed.

### Cause No. 04–87–00333–CR

The indictment alleged that appellant unlawfully appropriated guns, jewelry and a VCR from Antonio Gonzales, knowing it had been stolen by another. During trial the indictment was amended, with appellant's consent, to delete any reference to a VCR.

The record reflects that the complainant's home at 111 Glendale in Del Rio was burglarized on September 7, 1986, at which time several thousand dollars in jewelry, guns and camera equipment were stolen.

Juan Kiniskey, Silvester Diaz, Isidro Hernandez and Randy Ponce testified about their involvement in a series of burglaries committed in Val Verde County.

Kiniskey testified about his involvement in the burglaries of the Genaro Martinez home, the Earl Tarbet home, the Deana Martinez home, the Maxine Crossley home and the Antonio Gonzales home.

Kiniskey told how he sold the stolen items to appellants Mary and Juan Trevino and how appellants instructed him as to the type of property they would buy.

Hernandez and Diaz testified to similar facts including the fact that appellants knew they were buying stolen property.

Investigation focusing on appellants began in late 1986 following a rash of similar burglaries. After a suspect was apprehended, the identity of other offenders was learned.

It was also learned that items taken from the various burglaries were being taken to the home of appellants and sold.

During the course of one of the burglaries police officers observed the suspects leave the scene of a burglary and drive to the home of appellants. The officers also saw the burglars carry several items of property into appellants' home.

Del Rio police officer Donald Weaver identified numerous items as property stolen in reported burglaries and recovered from the appellants' home. These items were then identified by the several owners as property taken from their home in a burglary.

Kiniskey, Hernandez and Diaz each admitted to burglarizing the Gonzalez home and taking jewelry, guns, a VCR, a television set and camera equipment. Each burglar related how they took the property stolen from Gonzales to appellant. After selling the items to appellant, they informed her that the items came from a house near the hospital.

Gonzales verified that his house had been burglarized and the above described items taken. Gonzales' wife identified jewelry taken from her house and recovered from the Del Rio Police Department. Officer Weaver identified jewelry recovered from appellants' home and later identified by Mrs. Gonzales as being taken from her home during a burglary.

Of the items taken from the Gonzales home, only a part of the jewelry was recovered.

Appellant complains that there is no independent corroborating evidence to prove that items other than jewelry were received by appellant knowing that they had been stolen. Appellant insists that some physi-

cal evidence is required to corroborate the accomplice testimony.

■ The test for measuring the sufficiency of corroboration of an accomplice's testimony is whether that evidence tends to connect the accused with the offense. *Cooper v. State*, 631 S.W.2d 508, 510 (Tex. Crim.App.1982) (en banc).

■ The corroborative testimony sufficient to support a conviction of an accused based upon accomplice testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. *Reed v. State*, 744 S.W.2d 112, 126 (Tex.Crim.App.1988).

■ The question of sufficiency of corroboration of accomplice testimony must be determined by the facts of each particular case. *Peddy v. State*, 121 Tex.Crim. 558, 51 S.W.2d 331, 334 (1932).

■ Accomplice testimony may be corroborated by circumstantial as well as by direct evidence. *McInnis v. State*, 122 Tex. Crim. 128, 54 S.W.2d 96, 98 (1932).

■ In prosecutions for receiving and concealing stolen property, the thief must be corroborated both as to the theft and that the accused received the property from him knowing that it was stolen.[1] *Black v. State*, 513 S.W.2d 569, 571 (Tex. Crim.App.1974). Corroboration of knowledge that the property is stolen may be done through the circumstances of the particular case. *Graves v. State*, 123 Tex. Crim. 226, 58 S.W.2d 122, 123 (1933).

In the instant case items taken from the Gonzales residence were recovered from the possession of appellants. The burglars were seen actually leaving the scene of a burglary and were followed to the home of appellants where property taken from the burglary was deposited at appellants' house.

■ It is not necessary to corroborate the entire narrative and all of the testimony of an accomplice. *Sheffield v. State*, 371 S.W.2d 49 (Tex.Crim.App.1962), *cert. denied*, 375 U.S. 833, 84 S.Ct. 45, 11 L.Ed. 2d 63 (1963).

Possession by appellant of the fruits of the crime tends to connect him with the commission of theft. *Lyman v. State*, 540 S.W.2d 711, 714 (Tex.Crim.App.1976).

Repeated dealing with individuals under questionable circumstances together with the recovery of numerous items from unrelated burglaries is sufficient corroboration of appellant's knowledge (if such be required) that the property was stolen when received by her. The judgment of conviction in cause no. 04–87–00333–CR is affirmed.

### Cause No. 04–87–00334–CR

■ The indictment alleged that appellant unlawfully appropriated a television set and jewelry from Maxine Crossley, knowing it had been stolen by another.

The Crossley home was burglarized on September 8, 1986, at which time two television sets and assorted jewelry were taken. Complainant Crossley identified the items taken from her residence through photographs.

Isidro Hernandez testified that he had burglarized a house, later identified as the Crossley residence, from where he took two television sets and some jewelry. He also identified the items taken from the Crossley residence through photographs.

Hernandez testified that following the burglary he took the items to appellants' house where he left them in possession of appellant and her husband.

One of the television sets taken from Crossley was recovered from the child's bedroom in appellants' house.

Appellant argues that there is no evidence that she individually acquired the property and that the evidence merely

---

1. *But see* now TEX.PENAL CODE ANN. § 31.03(c)(2) dispensing with need to corrob- orate knowledge.

shows that the property was delivered to her house and later found in one of the children's bedrooms.

Juan Kiniskey also admitted his involvement in the Crossley burglary and identified the television set and jewelry taken from the Crossley home. Kiniskey testified that he took the television set to appellant and sold the set to her. He further described how appellant and her husband had hooked up the television set following the sale.

We do not agree with appellant that the evidence fails to show her direct receipt of the stolen article. The evidence shows direct receipt by both appellant and her husband. The evidence of the conduct of appellant is sufficient to sustain a conviction without resorting to the law of parties. *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim.App.1974).

We overrule appellant's contention that the evidence is insufficient to show her direct participation.

The judgment of conviction in cause no. 04–87–00334–CR is affirmed.

### Cause Nos. 04–87–00335–CR & 04–87–00338–CR

■ The indictments alleged that appellants Mary and Juan Trevino unlawfully appropriated a Fisher entertainment center and jewelry from Genaro Martinez, knowing it had been stolen by another.

The Martinez residence was burglarized on September 12, 1986, at which time telephones, jewelry and a Fisher entertainment center were taken. These items were recovered from appellants' home and were identified at trial through photographs.

Both Juan Kiniskey and Isidro Hernandez testified that they burglarized a house identified as Martinez' residence from which they took the items alleged in the indictment. The items were identified by Kiniskey and Hernandez through photographs.

Silvester Diaz testified that he, along with Kiniskey and Hernandez took the stolen items to appellants.

Martinez and his wife sufficiently identified the items taken from their residence through the use of photographs. Among items identified by Mrs. Martinez were several pieces of jewelry depicted in State's Exhibit 9, a photograph.

Appellant now argues that there is no evidence showing where the items depicted in State's Exhibit 9 were seized from. We do not agree.

Police officers Becerra and Weaver testified that a large amount of jewelry was recovered during the search of appellants' home and that some of the jewelry was found on the dresser, under a statue, in boxes and bags. They further testified that the jewelry and other items of property were matched to burglary reports and that the owners were called into the police station to identify and take possession of the property.

Genaro Martinez described the jewelry taken from his home and brought some of it into court with him. His wife identified the jewelry as being that which was taken during the burglary and later recovered at the police station. State's Exhibit 9, a photograph depicting the jewelry, was admitted into evidence without objection.

The State concedes and we agree that a better job could have been done by the State to segregate jewelry taken from the Martinez residence and other jewelry attributed to other burglaries. Nevertheless, it is clear that the jewelry alleged to have been taken in the indictment was shown to have been recovered and identified by the complainant and his wife to tie the items to the burglary and to the possession of appellant. We find it immaterial that State's Exhibit 9 additionally depicts items later attributed to other burglaries, especially when the exhibit was admitted without objection. The State was required to connect the items alleged to have been taken with the offense so as to show a knowing possession. This they did and we do not concern ourselves with other items also shown to have been taken elsewhere. Moreover, appellants elected to have all pending indictments tried together and cannot be heard to complain that evidence of other

crimes was also shown without a sorting out of the items by individual offenses. The judgments of conviction in cause nos. 04–87–00335–CR and 04–87–00338–CR are affirmed.

### Cause Nos. 04–87–00336–CR and 04–87–00339–CR

■ Appellants complain that the evidence is insufficient to prove beyond a reasonable doubt that Robert Chavira was the owner of the Apple Computer allegedly appropriated by appellant.

Robert Chavira testified that he was the principal of the eighth grade campus which had been burglarized on September 23, 1986, at which time an Apple Computer was taken from one of the classrooms.

In proving up ownership, Chavira testified that he was "the person who is in charge of this Apple Computer."

Silvester Diaz testified that he stole the computer and sold it to appellant. The computer was later recovered from appellants' car.

Appellants argue that proof of a management position alone is insufficient to sustain the ownership allegation absent some showing that the named owner had exercised some degree of care, custody, control, or management over the property allegedly stole. Reliance is had on *Freeman v. State*, 707 S.W.2d 597 (Tex.Crim. App.1986) (en banc).

Appellants say that a showing that Chavira was principal and in charge of the computer is not sufficient to show that he owned it.

The record reflects that Chavira testified that as principal of the school he was in charge of all the property at the school campus including the Apple Computer in question. He further testified that he knew of the computer's location, that he had the serial number of the computer and knew its value.

The trial court's charge to the jury tracked the penal code definition of owner and the charge was submitted without ob-

jection. *See* TEX.PENAL CODE ANN. § 1.07(a)(24) (Vernon 1974).[2]

We do not believe that the proof showed mere management of the property. Rather we think the evidence clearly showed that Chavira had care, custody and control of the property as well as exercised management rights. *See* definition of "possession," TEX.PENAL CODE ANN. § 1.07(a)(28) (Vernon 1974).

Thus the evidence clearly established that Chavira had possession of the property at the time of the taking, a method of showing ownership under TEX.PENAL CODE ANN. § 1.07(a)(24).

The judgments of conviction in cause no. 04–87–00336–CR and 04–87–00339–CR are affirmed.

We find no error requiring reversal in cause nos. 04–87–00333–CR, 04–87–00334–CR, 04–87–00335–CR, 04–87–00336–CR, 04–87–00337–CR, 04–87–00338–CR and 04–87–00339–CR. The judgments of conviction are affirmed.

---

**2.** "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.